UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PARADA CRUZ, ERIK SIGFREDO

*Petitioner*,

-against-

KRISTI NOEM, in her capacity as Secretary for the
United States Department of Homeland Security;

WILLIAM JOYCE, Field Office Director of New
York, Immigration and Customs Enforcement, in
his official capacity,

PAMELA BONDI, in her official capacity as the
Attorney General of the United States,

*Respondents*.

Case No. 26-1110

Judge _____

**Petition for Writ of Habeas Corpus and
Complaint for Declaratory and
Injunctive Relief**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                          3

PRELIMINARY STATEMENT                                                         7

PARTIES                                                                       8

JURISDICTION AND VENUE                                                        9

EXHAUSTION OF ADMINISTRATIVE REMEDIES                                        13

STATEMENT OF FACTS                                                           14

LEGAL FRAMEWORK                                                              14

PETITIONER IS NOT DETAINED PURSUANT TO INA § 235(b)                          14

PETITIONER'S DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT WERE VIOLATED      28

THIS COURT SHOULD HOLD THE BOND HEARING                                      32

OR ORDER RELEASE                                                             32

CLAIMS FOR RELIEF                                                            34

    **COUNT ONE**                                        34

    **Violation of 8 U.S.C. 1226(a) and Associated Regulations**       34

    **COUNT TWO**                                        34

    **Violation of Fifth Amendment Right to Due Process**       34

    **(Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a))**       34

    **COUNT THREE**                                      34

    **Violation of Fifth Amendment Right to Due Process**       34

    **(Failure to Provide an Individualized Hearing for Domestic Civil Detention)**       34

    **COUNT FOUR**                                       36

    **Violation of Fifth Amendment Right to Due Process**       36

    **(Substantive Due Process)**                        36

    **COUNT FIVE**                                       36

    **Violation of Fifth Amendment Right to Due Process When Denied a Pre-Deprivation Hearing**       36

PRAYER FOR RELIEF                                                            37

2

## TABLE OF AUTHORITIES

**Cases**

*Addington v. Texas*, 441 U.S. 418, 425 (1979) ...............................................................35

*Al Otro Lado v. Wolf*, 952 F.3d 999, 1011-12 (9th Cir. 2020) ....................................26

*Anicasio v. Kramer*, 2025 WL 2374224 (D. Neb. Aug. 14, 2025) .............................. 22

*Arango–Aradondo v. INS*, 13 F.3d 610, 614 (2d Cir. 1994) ...................................... 13

*Araujo-Cortes*, 35 F. Supp. 3d................................................................................13

*Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025) ..............................22

*Aviles-Mena v. Kaiser*, 2025 WL 2578215, (N.D. Cal. Sept. 5, 2025) ........................................31

*Biden v. Texas*, 597 U.S. 785, 799–800 (2022) .........................................................28

*Boumediene v. Bush*, 553 U.S. 723, 736, 771 (2008) ........................................10, 11, 12

*Brevil v. Jones*, No. 17 CV 1529-LTS-GWG, 2018 WL 5993731, at *2 (S.D.N.Y. Nov. 14, 2018) ...............................................................................................................13

*Burns v. Cicchi*, 702 F. Supp. 2d 281, 286 (D.N.J. 2010) ............................................. 13

*Caicedo Hinestroza v. Kaiser*, 2025 WL 2606983 (N.D. Cal. Sept. 9, 2025) ............................ 22

*Carmona-Lorenzo v. Trump*, 2025 WL 2531521 (D. Neb. Sept. 3, 2025) .................................. 21

*Chipantiza-Sisalema v. Francis*, 25 CIV. 5528 (AT) (S.D.N.Y. July 13, 2025) .........................23

*Clarke v. U.S. Dep't of Homeland Sec.*, No. 25-cv-6773 (E.D.N.Y. Dec. 18, 2025) ..................33,

*Compere v. Nielsen*, 2019 DNH 017, 358 F. Supp. 3d 170, 182, (D.N.H. Jan. 24, 2019) ...........12

*Cortes Fernandez v. Lyons*, 2025 WL 2531539 (D. Neb. Sept. 3, 2025) .................................... 21

*Cuevas Guzman v. Andrews*, 2025 WL 2617256, at *3 n.4 (E.D. Cal. Sept. 9, 2025) ...............22

*Darr v. Burford*, 339 U.S. 200, 225 (1950) ...................................................................11

*Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ............................25, 31, 35

*Devitri v. Cronen*, 289 F. Supp. 3d 294 (D. Mass. Feb. 1, 2018) ...................................12

*Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) ................................................19

*Doe v. Moniz,* 2025 WL 2576819 (D. Mass. Sept. 5, 2025) ........................................ 20

*Dos Santos v. Noem,* 2025 WL 2370988 (D. Mass. Aug. 14, 2025) .......................................... 20

*Fatty v. Nielsen*, No. C17-1535-MJP, 2018 WL 3491278, at *2 (W.D. Wash. Jul. 20, 2018) .......9

*Foucha v. Louisiana,* 504 U.S. 71, 81-83 (1992) ......................................................35

*Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025) ................................. 22

*Gieg v. Howarth*, 244 F.3d 775, 776 (9th Cir. 2001) ...................................................... 24

*Gomes v. Hyde,* 2025 WL 1869299 (D. Mass. July 7, 2025) ........................................ 20

*Hamdan v. Rumsfeld*, 548 U.S. 557, 575 (2006) ........................................................10

*Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) .......................................................9, 11

*Heikkila v. Barber*, 345 U.S. 229, 235 (1953) ........................................................ 11

*Hernandez Nieves v. Kaiser*, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025) ................................ 22

*Hernandez-Lara*, 10 F.4th.........................................................................................34

*Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995) ........................................................ 13

*Hyppolite v. Noem*, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025) .................................................31

*I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001) ...............................................................10, 12

*Ibrahim v. Acosta*, No. 17-cv-24574, 2018 WL 582520, at *5-6 (S.D. Fla. Jan. 26, 2018) .........13

*Jacinto v. Trump*, 2025 WL 2402271 (D. Neb. Aug. 19, 2025) ............................................. 22

*Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ......................................................19, 25, 32

*Jimenez v. FCI Berlin, Warden,* No. 25-cv-326-LM-AJ (D.N.H. Sept. 8, 2025) ....................... 20

*Jimenez v. Nielsen*, 334 F.Supp.3d 370, 381-82 (D. Mass. 2018) ............................................. 13

*Kansas v. Hendricks,* 521 U.S. 346, 357 (1997) ......................................................... 35

*King v. Burwell*, 576 U.S. 473, 492 (2015) ........................................................... 27

*Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025) ......................................... 21

*Lazaro Maldonado Bautista et al v. Ernesto Santacruz Jr et al*......................................................23

*Leal-Hernandez v. Noem*, 2025 WL 2430025 (D. Md. Aug. 24, 2025) ...................................... 21

*Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) ...........................20, 30

*Lopez v. Sessions*, No. 18 CIV. 4189 (RWS), 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018) .................................................................................................................23

*Lopez-Campos v. Raycraft,* 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025) .............................21

*Make the Road N.Y. v. Noem,* 2025 WL 2494908 (D.D.C. Aug. 29, 2025) ............................... 32

*Maldonado v. Olson*, 2025 WL 2374411 (D. Minn. Aug. 15, 2025) ..........................................22

*Mapp v. Reno,* 241 F.3d 221, 226–27 (2d Cir. 2001) ...............................................34

*Martinez v. Hyde,* 2025 WL 2084238 (D. Mass. July 24, 2025) ...............................................20

*Matter of C-*, 20 I&N Dec. 529, 532 (BIA 1992) ...............................................................13

*Matter of M-D-C-V-*, 28 I. & N. Dec. 18, 23 (BIA 2020) .........................................26, 27

*Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025) ......................................................16, 27

*Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) ....................................... passim

*McCarthy v. Madigan*, 503 U.S. 140, 148 (1992) ....................................................13

*Monsalvo Velazquez v. Bondi*, 145 S. Ct. 1232, 1242 (2025) ..........................................25

*O.E. v. Bondi*, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) ............................................. 22

*Palma Perez v. Berg*, 2025 WL 2531566 (D. Neb. Sept 3, 2025) ............................................22

*Pizarro Reyes v. Raycraft*, 2025 WL 2609425 (E..D. Mich. Sept. 9, 2025) .............................21

*Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1051 (9th Cir. 2015) ...................24

*Rodriguez-Acurio v. Almodovar*, 2025 WL 3314420 (Nov. 28, 2025) .............................30, 31

*Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025) ...............................22

*Romero v. Hyde,* 2025 WL 2403827 (D. Mass. Aug. 19, 2025) .................................................20

*Rosado v. Figueroa*, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025) ............................................22

*S.N.C. v. Sessions*, No. 18 CIV. 7680 (LGS), 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018) .....13

*Salcedo Aceros v. Kaiser*, 2025 WL 2637503 (N.D. Cal. Sep. 12, 2025) .................................31

*Samb v. Joyce,* 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025) ...............................................21

*Sampiao v. Hyde,* 2025 WL 2607924 (D. Mass. Sept. 9, 2025) ............................................. 20

*San Carlos Apache Tribe v. Becerra*, 53 F.4th 1236, 1240 (9th Cir. 2022) ..............................27

*Sean B. v. McAleenan*, 412 F. Supp. 3d 472, 490 (D.N.J. 2019) .................................................12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ...............24

*Shulman v. Kaplan*, 58 F.4th 404, 410–11 (9th Cir. 2023) ........................................................ 24

*Siahaan v. Madrigal*, No. PWG-20-02618, 2020 U.S. Dist. LEXIS 184193 (D. Md. Oct. 5, 2020) ....................................................................................................................................................12

*Sied v. Nielson*, No. 17-cv-06785, 2018 WL 1142202, at *31-67 (N.D. Cal. Mar. 2, 2018) .......12

*Skilling v. United States*, 561 U.S. 358, 406, (2010) ...............................................................12

*Sukwanputra v. Barr*, No. 19-3965, 2019 U.S. Dist. LEXIS 159558, at *7-8 (E.D. Pa. Sep. 19, 2019) ....................................................................................................................................................12

*Swain v. Pressley*, 430 U.S. 372, 381 (1977) .............................................................................12

*Torres v. Barr*, 976 F.3d 918, 927 (9th Cir. 2020) .......................................................................27

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988) ...28

*United States v. Salerno*, 481 U.S. 739, 755 (1987) ...............................................................34, 35

*Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 U.S. Dist. LEXIS 117131, at *4 (S.D.N.Y. June 18, 2025) ...............................................................................................................................................23

*Vasquez Garcia et al. v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025) ............................22

*Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) ..........................................................30, 31

*Villavicencio Calderon v. Sessions*, 330 F. Supp. 3d 944, 957-59 (S.D.N.Y. Aug. 1, 2018) .........9

*Yamataya v. Fisher,* 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721 (1903) .........................................31

*You v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. Aug. 2, 2018) ......................................................9

*Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)..................................................................9, 33, 35, 36

*Zaragoza Mosqueda v. Noem*, 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025) ....................22

**Statutes**

5 U.S.C. § 504...............................................................................................................................37

28 U.S.C. §2201...............................................................................................................................9

28 U.S.C. § 2241.........................................................................................................................7, 9

28 U.S.C. § 2243............................................................................................................................37

28 U.S.C. § 2412............................................................................................................................37

8 C.F.R. 236.1(d) ......................................................................................................................33, 34

8 C.F.R §1003.19....................................................................................................................16, 33, 34

8 C.F.R §1236.1(d) .......................................................................................................................16

8 U.S.C. § 1101...............................................................................................................................9

8 U.S.C. § 1103(a) ..........................................................................................................................8

8 U.S.C. § 1103(g) ..........................................................................................................................8

8 U.S.C. § 1225.......................................................................................................................... passim

8 U.S.C. § 1226(a) ..................................................................................................................... passim

8 U.S.C. § 1229a ......................................................................................................................16, 26

8 U.S.C. § 1231..........................................................................................................................9, 17

8 U.S.C. § 1252.........................................................................................................................10, 17

INA § 103(g) ..........................................................................................................8
INA § 212(a)(6)(A) .................................................................................................24
INA § 212(d)(5) ......................................................................................................18
INA § 235 ........................................................................................................ passim
INA § 235(a)(1) ...............................................................................18, 26, 27, 29
INA § 235(b) .................................................................................................... passim
INA § 235(b)(1) ................................................................................................16, 26
INA § 235(b)(2) ............................................................................................... passim
INA § 235(b)(2)(A) ....................................................................................26, 27, 29
INA § 236 ........................................................................................................ passim
INA § 236(a) .................................................................................................... passim
INA § 236(c) .................................................................................................... passim
INA § 236(c)(1) ................................................................................................19, 24
INA § 237 ...........................................................................................................18, 19
Laken Riley Act ...............................................................................................17, 24, 25

## Constitutional Provisions

U.S. CONST. art. I, § 9, cl. 2 ..................................................................................9, 11
U.S. CONST. amend. V ...............................................................................................35

## Rules

62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ...........................................................17

## PRELIMINARY STATEMENT

1. Petitioner, Erik Sigfredo Parada Cruz ("Petitioner"), brings this Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241; the All Writs Act, 28 U.S.C. § 1651; the Immigration and Nationality Act ("INA") and regulations thereunder; the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, and Article I, Section 9, Clause 2 of the United States Constitution ("Suspension Clause") and the Fifth Amendment of the United States Constitution.

2. Petitioner entered the United States without inspection on January 01, 2008. He has remained in the U.S. ever since and has four U.S. born children.

3. On February 26, 2026, DHS arrested the Petitioner in Roosevelt City, New York, when Petitioner was on his way to work. Petitioner is currently detained in ICE custody. Upon information and belief, Petitioner is detained in the Nassau County Correctional Center in East Meadow, New York.

4. Petitioner's removal proceedings were administratively closed on March 02, 2023. See **EXHIBIT A**.

5. On January 03, 2023, Petitioner's Lawful Permanent Resident mother submitted a Form I-130 to benefit Petitioner. Said application is currently pending before the United States Citizenship and Immigration Services (USCIS). See **EXHIBIT B**.

6. The BIA has published *Matter of Yajure Hurtado* which held that all noncitizens who enter without inspection are subject to mandatory detention under INA § 235(b)(2). *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Accordingly, the Petitioner did not receive an opportunity to seek bond before being detained.

## PARTIES

7. Petitioner Erik Sigfredo Parada Cruz is a native and citizen of El Salvador. He was arrested on February 06, 2026, and is currently detained in ICE custody. Upon information and belief, Petitioner is detained in in the Nassau County Correctional Center in East Meadow, New York, within the jurisdiction of the Eastern District of New York.

8. Respondent William Joyce is named in his official capacity as New York Field Office Director for the U.S. Immigration and Customs Enforcement. In this capacity, he is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a); routinely transacts business in the Eastern District of New York, and is legally responsible for pursuing Petitioner's detention and removal; and as such is the legal custodian of Petitioner. Respondent's address New York City ICE Field Office, 26 Federal Plaza, 9th Floor, Suite 9-110, New York, New York 10278. He is the legal custodian of the Petitioner.

9. Respondent Kristi Noem is named in her official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, she is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a); routinely transacts business in the Eastern District of New York, and is legally responsible for pursuing Petitioner's detention and removal; and as such is the legal custodian of Petitioner. Respondent Noem's address is U.S. Department of Homeland Security, Washington, District of Columbia 20528.

10. Respondent Pamela Bondi is named in her official capacity as the Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review, pursuant to INA § 103(g), 8 U.S.C. § 1103(g), routinely transacts business in the Eastern District of New York, and is legally responsible for administering Petitioner's removal proceedings and the standards used

8

in those proceedings.   Respondent Bondi's address is U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, District of Columbia 20530.

## JURISDICTION AND VENUE

11. This action arises under the Constitution of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., 8 U.S.C. § 1231; and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.

12. This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241, 28 U.S.C. § 1331, and Article I, § 9, cl. 2 of the United States Constitution; the All Writs Act, 28 U.S.C. § 1651; the Administrative Procedure Act, 5 U.S.C § 701; and for injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

13. Federal district courts have jurisdiction to hear habeas claims by noncitizens challenging DHS' conduct. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Federal district courts also have jurisdiction to hear "collateral legal and constitutional challenges to the process by which the government seeks to remove [a noncitizen]." *Fatty v. Nielsen*, No. C17-1535-MJP, 2018 WL 3491278, at *2 (W.D. Wash. Jul. 20, 2018); *see also You v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. Aug. 2, 2018); *Villavicencio Calderon v. Sessions*, 330 F. Supp. 3d 944, 957-59 (S.D.N.Y. Aug. 1, 2018).

14. Federal courts have jurisdiction to hear habeas petitions, because "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (plurality opinion of O'Connor, J.); U.S. CONST. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended . . ."); 28 U.S.C. § 2241(c)(3) (stating federal courts may grant the writ to any person "in custody in violation of the Constitution or laws or treaties of the United States").

15. The Suspension Clause saves this Court's jurisdiction and ability to hear Petitioner's claims. Although the Respondents will likely argue that 8 U.S.C. § 1252 strips the Court of jurisdiction, but as applied, the statute unconstitutionally suspends the habeas writ by failing to provide an adequate alternative forum for review. *See Boumediene v. Bush*, 553 U.S. 723, 736, 771 (2008) (determining first whether the statute "denies the federal courts jurisdiction," and then whether the statute "avoids the Suspension Clause mandate" by providing "adequate substitute procedures for habeas corpus"); *see also Hamdan v. Rumsfeld*, 548 U.S. 557, 575 (2006) (tracing the requirement of an "unmistakably clear statement" at least as far back as *Ex parte Yerger*, 75 U.S. 85, 104-05 (1868)). Thus, this Court retains residual habeas jurisdiction as the lack of an adequate alternative forum to meaningfully seek review would amount to a suspension of the writ of habeas corpus, such that the statutes would need to be read to permit Petitioner's claims to avoid a constitutional violation.

16. At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive encroachment on liberty, and it is in that context that its protections have been strongest. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). These protections extend fully to noncitizens subject to an order of removal. *See id.*; *see also* Gerard L. Neuman, *Habeas Corpus, Executive Detention, and the Removal of Aliens*, 98 COLUM. L. REV. 961, 1044 (1998) ("[H]istorical precedents beginning shortly after 1787 and reaching to the present confirm the applicability of the writ of habeas corpus to the detention involved in the physical removal of aliens from the United States. These precedents include opinions . . . denying the power of Congress to eliminate judicial inquiry").

17. The right to seek habeas corpus relief is fundamental to the Constitution's scheme of ordered liberty. Habeas corpus is "a writ employed to bring a person before a court, most frequently to

ensure that the party's imprisonment or detention is not illegal." *Boumediene*, 553 U.S. at 737 (quoting Black's Law Dictionary 728 (8th ed. 2004)). Blackstone called it "the most celebrated writ in English law," 3 Blackstone's Commentaries 129 (1791), and deemed the Habeas Corpus Act of 1679 "the bulwark of the British Constitution." 4 Blackstone's Commentaries 438 (1791).

18. In the penultimate Federalist Paper, Alexander Hamilton praised the establishment of the writ as a defense against "the favorite and most formidable instruments of tyranny." The Federalist No. 84, p. 251 (R.M. Hutchins ed. 1952). Indeed, the "great writ of liberty," *see Darr v. Burford*, 339 U.S. 200, 225 (1950) (Frankfurter, J., dissenting), is "the only common-law writ to be explicitly mentioned" in the Constitution. *Hamdi*, 542 U.S. at 558 (Scalia, J., dissenting) (citing U.S. CONST. art. I, § 9, cl. 2.).

19. The U.S. Constitution followed its English counterpart in permitting legislative suspension of the writ in extreme circumstances. In England, "the parliament only, or legislative power, whenever it sees proper, [could] authorize the crown, by suspending the habeas corpus act for a short and limited time, to imprison suspected persons without giving any reason for so doing." 1 Blackstone's Commentaries 132 (1791).

20. The United States Constitution, however, does not permit suspension of the writ "whenever [the legislature] sees proper," but rather guarantees in the Suspension Clause that "The Privilege of the Writ of Habeas Corpus shall not be suspended, The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. "[B]ecause of that Clause, some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution.'" *St. Cyr*, 533 U.S. at 300 (quoting *Heikkila v.*

*Barber*, 345 U.S. 229, 235 (1953)). For a statute to limit the writ, it "must overcome both the strong presumption in favor of judicial review of administrative action and the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." *St. Cyr*, 553 U.S. at 298 (footnote omitted). Congress can strip jurisdiction without violating the Suspension Clause only where it provides "a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention." *Swain v. Pressley*, 430 U.S. 372, 381 (1977); *see also Boumediene*, 553 U.S. at 779.

21. "[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and [ ] an alternative interpretation of the statute is fairly possible, [courts] are obligated to construe the statute to avoid such problems." *St. Cyr*, 533 U.S. at 299-300. "Indeed, it is an elementary rule in construing acts of Congress that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Skilling v. United States*, 561 U.S. 358, 406, (2010).

22. Courts have found that the Suspension Clause protects Petitioner's rights to habeas relief because of the inadequacy of the motion to reopen process, *See Sean B. v. McAleenan*, 412 F. Supp. 3d 472, 490 (D.N.J. 2019) ("I am most moved here by the constitutional necessity of a stay under the Suspension Clause, see supra, and the likelihood of a violation of Petitioner's procedural and constitutional rights if it is not granted. Petitioner may or may not prevail before the BIA or the Court of Appeals; the Constitution requires, however, that his opportunity to put his case be preserved); *Sukwanputra v. Barr*, No. 19-3965, 2019 U.S. Dist. LEXIS 159558, at *7-8 (E.D. Pa. Sep. 19, 2019); *Compere v. Nielsen*, 2019 DNH 017, 358 F. Supp. 3d 170, 182, (D.N.H. Jan. 24, 2019); *Siahaan v. Madrigal*, No. PWG-20-02618, 2020 U.S. Dist. LEXIS 184193 (D. Md. Oct. 5, 2020); *Devitri v. Cronen*, 289 F. Supp. 3d 294 (D. Mass. Feb.

1, 2018); *Ibrahim v. Acosta*, No. 17-cv-24574, 2018 WL 582520, at *5-6 (S.D. Fla. Jan. 26, 2018); *Jimenez v. Nielsen*, 334 F.Supp.3d 370, 381-82 (D. Mass. 2018). Other courts have found that it was necessary to apply the canon of constitutional avoidance to avoid ruling on the Suspension Clause issues raised. *S.N.C. v. Sessions*, No. 18 CIV. 7680 (LGS), 2018 WL 6175902, at *3 (S.D.N.Y. Nov. 26, 2018); *Sied v. Nielson*, No. 17-cv-06785, 2018 WL 1142202, at *31-67 (N.D. Cal. Mar. 2, 2018).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

23. No exhaustion requirement applies to the constitutional claims raised in this Petition because no administrative agency exists to entertain Petitioner's constitutional challenges. *See Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995); *Arango-Aradondo v. INS*, 13 F.3d 610, 614 (2d Cir. 1994), *see also Matter of C-*, 20 I&N Dec. 529, 532 (BIA 1992) ("it is settled" that the immigration judge and the BIA cannot decide constitutional questions); *Burns v. Cicchi*, 702 F. Supp. 2d 281, 286 (D.N.J. 2010) (excusing further exhaustion where dispositive issues had been predetermined).

24. Additionally, exhaustion is not required where the Petitioner challenges the constitutionality of the agency procedure itself, "such that the question of the adequacy of the administrative remedy is for all practical purposes identical with the merits of the plaintiff's lawsuit." *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992) (internal brackets omitted).

25. Finally, "courts may waive a judicially created exhaustion requirement where pursuing administrative remedies would be futile," as any would be here. *Brevil v. Jones*, No. 17 CV 1529-LTS-GWG, 2018 WL 5993731, at *2 (S.D.N.Y. Nov. 14, 2018) (quoting *Araujo-Cortes*, 35 F. Supp. 3d at 538-39)).

## STATEMENT OF FACTS

26. Petitioner entered the United States without inspection on January 01, 2008. He has remained in the U.S. ever since.

27. Petitioner's removal proceedings were administratively closed on March 02, 2023. See **EXHIBIT A**.

28. On January 03, 2023, Petitioner's Lawful Permanent Resident mother submitted a Form I-130 to benefit Petitioner. Said application is currently pending before the United States Citizenship and Immigration Services (USCIS). See **EXHIBIT B**.

29. On February 26, 2026, Petitioner was on the way to work when DHS arrested him in Roosevelt City, New York. Petitioner is currently detained in ICE custody. Upon information and belief, Petitioner is detained in the Nassau County Correctional Center in East Meadow, New York.

30. Petitioner has one conviction for disorderly conduct stemming from a September 04, 2004 arrest. See **EXHIBIT C**. Petitioner has had no negative encounters with the law in the over 20 years following that arrest.

31. Petitioner has four U.S. born children who depend on him greatly in their daily life.

## LEGAL FRAMEWORK

## PETITIONER IS NOT DETAINED PURSUANT TO INA § 235(b)

32. Recently, the BIA has vacated and overruled decades of analysis regarding what statutory detention scheme for people who have entered without inspection. In *Matter of Yajure Hurtado* and *Matter of Q. Li*, the BIA held that all noncitizens who enter without inspection are subject to mandatory detention under INA § 235(b)(2). *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). It created a sweeping new rule that strips most noncitizens who entered without inspection of the right to seek bond from an IJ, regardless of how long they have been residing

14

in the country and where they were apprehended by immigration authorities. In the interest of judicial economy, the Plaintiff chooses to address this hypothetical argument, in the event that DHS chooses to ignore decades of legal analysis regarding statutory interpretation in favor of *Matter of Yajure Hurtado, supra.*

33. The INA prescribes three basic forms of detention for noncitizens in removal proceedings. First, INA § 236 authorizes the detention of noncitizens in standard non-expedited removal proceedings before an IJ. *See* INA § 236; 8 U.S.C. § 1229a. Individuals in INA § 236(a) detention are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* INA § 236(c). Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under INA § 235(b)(1) and for other *recent arrivals* seeking admission referred to under INA § 235(b)(2). Finally, the Act also provides for detention of noncitizens who have been previously ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

34. The detention provisions at INA § 236(a) and § 235(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104- –208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 236(c) was most recently amended earlier this year by the LRA, Pub. L. No.119-1, 139 Stat. 3 (2025).

35. Following the enactment of the IIRIRA, the Executive Office of Immigration Review drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under INA § 235 and that they were instead detained under INA § 236(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens;

Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In the decades that followed, most noncitizens who entered without inspection—unless they were subject to some other detention authority—received bond hearings. This practice was also consistent with the practice prior the enactment of the IIRIRA, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

36. On July 8, 2025, DHS issued a memo to all employees of Immigration and Customs Enforcement ("ICE") stating that "[t]his message serves as notice that DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that section 235 of the Immigration and Nationality Act (INA), rather than section 236, is the applicable immigration detention authority for all applicants for admission. The following interim guidance is intended to ensure immediate and consistent application of the Department's legal interpretation while additional operational guidance is developed." The memo further stated DHS' new position with regard to custody determinations as follows:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c).**

Moving forward, ICE will not issue Form I-286, Notice of Custody Determination, to applicants for admission because Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of Title 8 of the Code of Federal Regulations. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will affirmatively cancel the Form I-286.

*See* https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-appli

37.  As a result, according to DHS *all* noncitizens who have entered the United States without inspection and are subject to the grounds of inadmissibility, including long-time U.S. residents, are now considered to be subject to mandatory detention under INA § 235(b) and ineligible for release on bond. Conversely, according to DHS "[t]he only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c)." *Id*.

38.  The plain text of INA § 236 demonstrates that it, not INA § 235(b), applies to Petitioner's detention. INA § 236(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citation omitted). As the Supreme Court has remarked, INA § 236(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting INA § 236(a)). Section 236(c) carves out a statutory category of noncitizens for whom detention is mandatory, consisting of individuals who have committed certain "enumerated . . . criminal offenses [or]

17

terrorist activities." INA § 236(c). Among the individuals carved out and subject to mandatory detention are certain categories of "inadmissible" noncitizens. *See* INA § 236(c)(1)(A), (D), (E). This is in stark contrast with mandatory detention provision under INA § 235(b)(2), which "supplement[s] § [236's] detention scheme." *Diaz,* 53 F.4th at 1197. Section 235(b) "applies primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297; *see* INA § 235(b) (entitled "Inspection of applicants for admission").  September 1, 2023 BIA Decision (The BIA remanded the case so that the respondent may receive a custody redetermination hearing before the Immigration Judge. Noting that "respondent last entered the United States without being admitted or paroled" and holding that "we are unaware of any precedent stating that an Immigration Judge lacks authority to redetermine the custody conditions of a respondent in removal proceedings under the circumstances here.").

39. Numerous District Courts have rejected *Yajure Hurtado. See Sampiao v. Hyde,* 2025 WL 2607924 (D. Mass. Sept. 9, 2025) (noting court's disagreement with BIA's analysis in *Yajure Hurtado*)*;  See Also Jimenez v. FCI Berlin, Warden,* No. 25-cv-326-LM-AJ (D.N.H. Sept. 8, 2025) (noting that the court was not persuaded by BIA's analysis in *Yajure Hurtado*);   *See Also Doe v. Moniz,* 2025 WL 2576819 (D. Mass. Sept. 5, 2025) (finding that detaining the petitioner without bond violated his due process rights, and because he had been residing in the United States for some time, he was not "seeking admission" when he was detained, so section 1225 did not apply to him);   *See Also Romero v. Hyde,* 2025 WL 2403827 (D. Mass. Aug. 19, 2025) (finding that the petitioner was subject to discretionary detention under section 1226, not mandatory detention under section 1225, and that applying section 1225(b)(2)(A) to all "applicants for admission" would contradict the agency's regulations, published guidance,

the majority of precedent, and the plain meaning of the statute); *See Also Martinez v. Hyde,* 2025 WL 2084238 (D. Mass. July 24, 2025) (holding that the noncitizen petitioner, who was apprehended within the United States after crossing the border illegally, was not subject to mandatory detention, as she was released on recognizance under section 1225, not section 1226); *See Also dos Santos v. Noem,* 2025 WL 2370988 (D. Mass. Aug. 14, 2025) (ordering the noncitizen petitioner's release from detention after he was arrested on a warrant citing section 1226, and rejecting the government's argument that he was detained under section 1225(b)(2) as contravening the plain text of Section 1226(a) and rendering superfluous Section 1226(c)); *See Also Gomes v. Hyde,* 2025 WL 1869299 (D. Mass. July 7, 2025) (rejecting the government's statutory construction and holding that the noncitizen petitioner's detention was governed by section 1226(a)'s discretionary framework because he was arrested on a warrant and ordered detained under section 1226); *See Also Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) (concluding that the plain language and structure of the statute support the conclusion that the mandatory detention provision of § 1225, which applies to noncitizens "seeking admission," did not apply to the noncitizen petitioner who had never been lawfully admitted but had been residing in the United States for over two years, and holding that the petitioner was excused from the administrative exhaustion requirement because he had no genuine opportunity for adequate relief and raised a substantial constitutional question); *See Also Samb v. Joyce,* 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025) (holding that the petitioner was not subject to mandatory detention as a noncitizen "seeking admission" to the country under 8 U.S.C. § 1225, but instead could only be subject to detention on a discretionary basis under § 1226, and finding that the petitioner's due process rights were violated when he was re-arrested without any individualized assessment or

19

determination);   *See Also Leal-Hernandez v. Noem*, 2025 WL 2430025 (D. Md. Aug. 24, 2025) (rejecting the government's statutory construction and finding that the petitioner, who had been present in the United States for more than 20 years at the time of his arrest, is not an "arriving alien" and is therefore subject to § 1226(a), under which he should be released on bond);   *See Also Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025) (finding that the government's position that Section 1225 applies "because Petitioner is present in the United States without being admitted" is contrary to the Supreme Court's analysis of the application of 1225 to arriving aliens and would render Section 1226 unnecessary);   *See Also Pizarro Reyes v. Raycraft*, 2025 WL 2609425 (E..D. Mich. Sept. 9, 2025)  (disagreeing with BIA's analysis in *Yajure Hurtado*);   *See Also Lopez-Campos v. Raycraft,* 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025);   *See Also Carmona-Lorenzo v. Trump*, 2025 WL 2531521 (D. Neb. Sept. 3, 2025);   *See Also Cortes Fernandez v. Lyons*, 2025 WL 2531539 (D. Neb. Sept. 3, 2025);   *See Also Palma Perez v. Berg*, 2025 WL 2531566 (D. Neb. Sept 3, 2025);   *See Also O.E. v. Bondi*, 2025 WL 2466670 (D. Minn. Aug. 27, 2025);   *See Also Jacinto v. Trump*, 2025 WL 2402271 (D. Neb. Aug. 19, 2025);   *See Also Maldonado v. Olson*, 2025 WL 2374411 (D. Minn. Aug. 15, 2025);   *See Also Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025);   *See Also Anicasio v. Kramer*, 2025 WL 2374224 (D. Neb. Aug. 14, 2025);   *See Also Cuevas Guzman v. Andrews*, 2025 WL 2617256, at *3 n.4 (E.D. Cal. Sept. 9,  2025) (distinguishing *Yajure Hurtado*);   *See Also Caicedo Hinestroza v. Kaiser*, 2025 WL 2606983 (N.D. Cal. Sept. 9, 2025);   *See Also Zaragoza Mosqueda v. Noem*, 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025) (noting that BIA's decision in *Yajure Hurtado* renders requiring prudential exhaustion futile);   *See Also Hernandez Nieves v. Kaiser*, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025);   *See Also Vasquez Garcia et al. v. Noem*, 2025 WL 2549431 (S.D. Cal.

20

Sept. 3, 2025);   *See Also Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025);   *See Also Rosado v. Figueroa*, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025);   *See Also Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

40. The District Court of New Jersey has also found that a similarly situated Petitioner was not subject to mandatory detention under section 1225 and ordered release from detention. *See Rivera Zumba v. Bondi*, 2025 WL 2753496 (D.N.J. Sept. 26, 2025) (holding that "petitioner's mandatory detention under Section 1225 violated the INA and the Due Process Clause of the Fifth Amendment" and ordering Respondents to release Petitioner).

41. In *Vazquez v. Bostock*, a district court in the Western District of Washington preliminarily enjoined the Executive Office for Immigration Review ("EOIR") in Tacoma, Washington from denying bond pursuant to INA § 235(b). ("Rodriguez is likely to succeed on the merits, or at least has raised serious questions, that he is unlawfully detailed under that he is unlawfully detained under Section 1225(b)'s mandatory detention authority and instead should be governed under Section 1226(a)'s discretionary scheme. Petitioner need not exhaust administrative remedies"). *Id*.

42. On July 28, 2025, a court in the Central District of California in *Lazaro Maldonado Bautista et al v. Ernesto Santacruz Jr et al.*, issued a preliminary injunction enjoining DHS from continuing to detain similarly situated noncitizens unless they are provided with an individualized bond hearing (noting that INA § 235 does not apply to noncitizens who entered without inspection or parole).

43. *See Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) (ordering release of petitioner re-detained after an immigration court hearing and concluding "Respondents ongoing detention of Petitioner with no process at all, much less

prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights."); *Chipantiza-Sisalema v. Francis*, 25 CIV. 5528 (AT) (S.D.N.Y. July 13, 2025) (same); *Lopez v. Sessions*, No. 18 CIV. 4189 (RWS), 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018) ("Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment").

44. Thus, the plain text of INA § 236(a) applies to noncitizens like the Petitioner. The fact that INA § 236(a) is the default rule for arrest and detention and that section (c) carves out exceptions further demonstrates that the discretionary bond procedures apply to noncitizens like Petitioner who are present without being admitted or paroled and have not been implicated in any crimes set forth in subsection (c). The Supreme Court has held that when Congress creates "specific exceptions" to a statute's applicability, it "proves" that absent those exceptions, the statute generally applies. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010).

45. The recent enactment of LRA further supports this finding. The Act added language to INA § 236(c) that directly references people who have entered without inspection or who are present without authorization. *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). Pursuant to these amendments, noncitizens charged as inadmissible under INA § 212(a)(6)(A) (the inadmissibility ground for entry without inspection) or INA § (a)(7)(A) (the inadmissibility ground for lacking valid documentation to enter the United States) *and* who have been arrested, charged with, or convicted of new certain crimes (not previously covered by INA § 236(c)) are now subject to § 1226(c)'s mandatory detention provisions. *See* INA § 236(c)(1)(E). By including such individuals under INA § 236(c), Congress reaffirmed that § 236(a) covers

22

noncitizens who are not subject to section (c) but are charged as removable under § 212(a)(6)(A) or 212(a)(7). *Gieg v. Howarth*, 244 F.3d 775, 776 (9th Cir. 2001) ("[w]hen Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect.").

46. If INA § 236(a) did not apply to Petitioner—like DHS contends—vast portions of the INA § 236 would be rendered meaningless. This is because DHS contends that noncitizens like Petitioner who entered without inspection are really "applicants for admission" and therefore subject to mandatory detention under INA § 235(b)(2). Courts have made it clear that statutes must be interpreted as a whole, "giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Shulman v. Kaplan*, 58 F.4th 404, 410–11 (9th Cir. 2023) (quoting *Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1051 (9th Cir. 2015)).

47. It is noteworthy that "[w]hen Congress adopts a new law against the backdrop of a longstanding administrative construction," courts "generally presume[] the new provision should be understood to work in harmony with what has come before." *Monsalvo Velazquez v. Bondi*, 145 S. Ct. 1232, 1242 (2025) (internal quotation marks omitted). Here, DHS' sudden reversal—particularly after Congress just recently amended INA § 236 to include the LRA provisions—further undermines the Department's argument that the detention authority for noncitizens like Petitioner lies under INA § 235(b) instead of INA § 236(a).

48. As noted above, DHS' new position contends that Petitioner is subject to mandatory detention under INA § 235(b)(A) because he is an "applicant for admission." But INA § 235(b)(A) concerns a completely different category of noncitizens. In *Jennings*, the Supreme Court discussed INA § 235 as part of a process that "generally begins at the Nation's borders and

23

ports of entry, where the Government must determine whether a [noncitizen] seeking to enter the country is admissible." 583 U.S. at 287. As for INA § 236, *Jennings* described it as governing "the process of arresting and detaining" noncitizens who are living "inside the United States" but "may still be removed," including noncitizens "who were inadmissible at the time of entry." *Id*. at 288. The Court then summarized the distinction as follows: "In sum, U.S. immigration law authorizes the Government to detain certain [noncitizens] seeking admission into the country under §§ [235](b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] *already in the country pending the outcome of removal proceedings* under §§ [236](a) and (c)." *Id*. at 289 (emphasis added); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (a noncitizen "who *tries to enter* the country illegally is treated as an applicant for admission . . . and a [noncitizen] who is detained *shortly after unlawful entry* cannot be said to have effected an entry") (emphasis added) (cleaned up).

49. DHS' newfound position misconstrues the phrase "applicant for admission" to suggest that every person, other than those who have been admitted, are subject to mandatory detention. INA § 235(a)(1) defines an "applicant for admission" as a person who is "present in the United States who has not been admitted or who arrives in the United States." INA § 235(a)(1). According to DHS, INA 235(b)(1) generally applies to arriving aliens and INA § 235(b)(2) serves as a broader catchall provision for all applicants for admission not covered by INA § 235(b)(1). In other words, DHS argues that every noncitizen who entered without parole or inspection is an "applicant for admission" pursuant to § 235(a)(1) and is therefore subject to mandatory detention. However, INA § 235(b)(2)(A) states in full that:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an *alien seeking admission*

24

*is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.*

*Id*. (emphasis added).

50. Thus, for section 235(b)(2)(A) to apply, several conditions must be met—in particular, an "examining immigration officer" must determine that the individual is: (1) an "applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted." DHS' position conveniently overlooks these conditions and treats "applicants for admission" the same as those "seeking admission." The phrase "seeking admission" is undefined in the statute but necessarily implies some sort of present-tense action. *See Matter of M-D-C-V-*, 28 I. & N. Dec. 18, 23 (BIA 2020) ("The 'use of the present progressive, like use of the present participle, denotes an ongoing process.'" (quoting *Al Otro Lado v. Wolf*, 952 F.3d 999, 1011-12 (9th Cir. 2020))). Indeed, only those who take affirmative acts, like submitting an "application for admission," are those that can be said to be "seeking admission" within § 235(b)(2)(A).

51. By limiting (b)(2) to those "seeking admission," Congress confirmed that it did not intend to sweep into this section individuals like Petitioner who have already entered and are now residing in the United States. *See Torres v. Barr*, 976 F.3d 918, 927 (9th Cir. 2020) (en banc) (holding that an individual submits an "application for admission" only at "the moment in time when the immigrant actually applies for admission into the United States.")[1] Accordingly, INA § 235(b)(2)'s reference to "applicants for admission" must be read "in their context and with a view to their place in the overall statutory scheme." *San Carlos Apache Tribe v. Becerra*, 53

---

[1] In *Torres*, the en banc Court of Appeals rejected the idea that § 235(a)(1) means that anyone who is presently in the United States without admission or parole is someone "deemed to have made an actual application for admission." *Id.* (emphasis omitted).

F.4th 1236, 1240 (9th Cir. 2022) (citation omitted); *see also King v. Burwell*, 576 U.S. 473, 492 (2015) (looking to an act's "broader structure . . . to determine [the statute's] meaning"). The Board's recent decision in *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025) reinforces this position. The Board held that a noncitizen who was apprehended "approximately 5.4 miles away from a designated port of entry and 100 yards north of the border" was detained under INA § 235(b) and not INA § 236(a). *Id*. at 67. In other words, the noncitizen was apprehended upon arrival. The Board then explained that such persons are properly treated as "arriv[ing] in the United States," given that they are "detained shortly after unlawful entry," and "'[are] apprehended' just inside 'the southern border, and not at a point of entry, on the same day [they] crossed into the United States.'" *Id*. at 68 (quoting *Matter of M-D-C-V-*, 28 I. &. N. Dec. 18, 23 (BIA 2020)). Notably, the Board's decision supports the argument that INA § 236(a) "applies to [noncitizens] already present in the United States," while INA § 235(b) "applies primarily to [noncitizens] seeking entry into the United States and authorizes DHS to detain a[] [noncitizen] without a warrant at the border." *Id*. at 70 (internal quotation marks omitted).

52. The broader statutory structure of immigration detention authority also demonstrates the inapplicability of INA § 235(b) to Petitioner's case. *See King*, 576 U.S. at 492 (explaining that an act's "broader structure" can be a useful tool "to determine [a statute's] meaning."); *see also Biden v. Texas*, 597 U.S. 785, 799–800 (2022) (looking to statutory structure to inform interpretation of INA provision). This is particularly true where "a provision . . . may seem ambiguous in isolation." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Associates, Ltd*., 484 U.S. 365, 371 (1988). In such situations, the statute's meaning "is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *Id*.

53. The broader text of INA § 235 reinforces this understanding of the two sections' structure and application. INA § 235 concerns "expedited removal of inadmissible *arriving* [noncitizens]." INA § 235 (emphasis added). Paragraph (b)(1) encompasses only the "inspection" of certain "arriving" noncitizens and other recent entrants the Attorney General designates, and only those who are "inadmissible" for having misrepresented information to an inspecting officer or for lacking documents to enter the United States. Paragraph (b)(2) is similarly limited to people applying for admission when they arrive in the United States. The title explains that this paragraph addresses the "[i]nspection of other [noncitizens]," i.e., those noncitizens who are "seeking admission," but whom (b)(1) does not address. *Id*. § 235(b)(2), (b)(2)(A).

54. By limiting (b)(2) to those "seeking admission," Congress confirmed that it did not intend to sweep into this section individuals like Petitioner who have already entered and are now residing in the United States. Otherwise, the language "seeking admission" in INA § 235(b)(2) serve no purpose, as the statute specifies that it is addressing a person who is both an "applicant for admission" and who is determined to be "seeking admission." *Id*.

55. Furthermore, subparagraph (b)(2)(C) addresses the "[t]reatment of [noncitizens] arriving from contiguous territory," i.e., "the case of [a noncitizen] . . . who is arriving on land." INA § 235(b)(2)(C). This language further underscores Congress's temporal requirements in INA § 235 and focus on those who are arriving into the United States. Similarly, the title of § 235 refers to the "inspection" of "inadmissible arriving" noncitizens. *See, e.g., Dubin v. United States*, 599 U.S. 110, 120–21 (2023) (relying on section title to help construe statute).

56. Finally, the entire statute is premised on the idea that an inspection occurs near the border and shortly after arrival, as the statute repeatedly refers to "examining immigration officer[s]," INA

27

§ 235(b)(2)(A), (b)(4), and sets out procedures for "inspection[s]" of people "arriving in the United States," id. § 235(a)(3), (b)(1), (b)(2), (d).

57.  It is no surprise that *Matter of Yajure Hurtado* has been rejected by numerous District Courts. 29 I&N Dec. 216 (BIA 2025).

58. The Court possesses jurisdiction to release Petitioner on bond or, in the alternative, release on his own recognizance, pursuant to INA § 236(a).

## PETITIONER'S DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT WERE VIOLATED

59. Petitioner's lack of pre-deprivation hearing violated his Due Process rights under the Fifth Amendment. Before the government detains a noncitizen under Section 1226(a), due process requires that an individualized assessment be conducted regarding the person's circumstances: whether they are a flight risk or danger to society.

60. The *Lopez Benitez* Court found that the Petitioner was denied due process when ICE detained him on July 16, 2025, without first conducting an individualized assessment as to his dangerousness or flight risk, or any kind of process at all sufficient to qualify as a valid exercise of discretion. The Respondents maintain that, to cure this violation, Mr. Lopez Benitez may seek relief from this violation in a bond hearing in immigration court. The Court held that "[s]uch a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Benitez v. Francis*, (S.D.N.Y. Aug. 8, 2025).

61. At the hearing, counsel for Respondents argued that § 1226(a) does not require that a noncitizen be given notice and an opportunity to contest detention at "some sort of pre-deprivation hearing in front of a DHS officer." The Court does not hold anything to the contrary. To be clear, the Court does not hold that some sort of adversarial hearing-like process is required before DHS

28

may exercise its discretion to detain a noncitizen under § 1226(a). Nor does the Court hold that DHS must engage in a painstaking review of every facet of a noncitizen's history and characteristics before doing so. *Cf. Reno*, 507 U.S. at 313 (finding that the requirement of an "individualized determination" in at least some contexts "does not mean that [DHS] must forswear use of reasonable presumptions and generic rules"). *Benitez v. Francis*, (S.D.N.Y. Aug. 8, 2025)

62. Recently, the government stated its current statutory interpretation in an analogous case, *Rodriguez-Acurio v. Almodovar*, 2025 WL 3314420 (Nov. 28, 2025). The Eastern District of New York rejected this statutory interpretation, which Respondents will likely advance in the present case:

> The Due Process Clause "covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01, 23 S.Ct. 611, 47 L.Ed. 721 (1903) (noncitizen who entered the country in violation of the law cannot be "deprived of [her] liberty" without receiving "due process of law"). In habeas proceedings concerning executive detention, courts must conduct "the most searching review" to ensure the legality of detention that "occur[s] without the procedural protections required in courts of law." *Velasco Lopez*, 978 F.3d at 850–51.

> . . . *Thuraissigiam* stands for the limited principle that those "at the threshold of initial entry" stand on a different footing for due process purposes than noncitizens "who have established connections in this country." 591 U.S. at 107, 140 S.Ct. 1959. Whereas Rodriguez-Acurio was paroled into the interior of the United States, has been living and working in the United States for more than four years, and has a three-year-old U.S. citizen child (Pet. ¶¶ 2, 16; Lipsitz Aff. ¶ 6), *Thuraissigiam* was "brought by an individual who was apprehended *25 yards* from the border and then was subject to continuous detention," *Aviles-Mena*, 2025 WL 2578215, at *4 (citing *Thuraissigiam*, 591 U.S. at 119, 140 S.Ct. 1959) (emphasis added). Therefore, *Thuraissigiam* "merely held that noncitizens '*in [the] respondent's position*'—those detained close to the border 'shortly after unlawful entry'—have not yet 'effected an entry.' " *Make the Rd.*, —— F.Supp.3d at ——, 2025 WL 2494908, at *11 (quoting *Thuraissigiam*, 591 U.S. at 140, 140 S.Ct. 1959) (emphasis in original).

***

29

> Furthermore, it is also notable that *Thuraissigiam*'s holding concerns only "the right to additional due process sought over admission determinations" and does not "address the due process rights of a noncitizen to remain free once released." *Hyppolite*, 2025 WL 2829511, at \*10 (quoting *Salcedo Aceros v. Kaiser*, No. 25-cv-6924, 2025 WL 2637503, at \*6 (N.D. Cal. Sep. 12, 2025)). Indeed, the Supreme Court made clear that Thuraissigiam sought "a new opportunity to apply for asylum and other applicable forms of relief" and that "[h]is petition made *no mention of release from custody.*" 591 U.S. at 115, 140 S.Ct. 1959 (emphasis added). By contrast Rodriguez-Acurio invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851; *see also Aviles-Mena*, 2025 WL 2578215, at \*4 (finding *Thuraissigiam* inapplicable because the petitioner's "habeas petition challenges his detention, not his 'admission' ").

*Rodriguez-Acurio*, 2025 WL 3314420, at \*26–27. The government's position mandates "that unless and until someone is lawfully admitted, they are entitled to zero process beyond whatever courtesy Congress might offer. If that was right, Congress could subject noncitizens who had spent decades in the United States to immediate removal, without any advance notice or right to a hearing, and the Constitution would have nothing to say about it." *Id*. (quoting *Make the Road*, 2025 WL 2494908, at \*11). Accepting this argument would mean endorsing a clear violation of the constitutional due process rights of thousands of people, including the Petitioner.

63. Absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ. *See, e.g., Ortega*, 415 F. Supp. 3d at 970; *Vargas*, 2020 WL 5074312, at \*3–4; *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1056 (N.D. Cal. 2021). *Guillermo M. R. v. Kaiser*, 2025 WL 1983677, at \*9 (N.D.Cal., 2025).

64. Even though the statutory protections of section 1226(a) require only a prompt post-deprivation hearing, "we conclude here that the high risk of erroneous deprivation in this case

30

likely means that a pre-deprivation hearing is constitutionally necessary". *Valencia Zapata v. Kaiser*, 2025 WL 2741654, at *11 (N.D.Cal., 2025).

65. The government has failed to conduct a meaningful custody determination. ICE failed to conduct a lawful, individualized custody determination analyzing danger and flight risk as required by due process and by 8 C.F.R. § 1236.1.

66. ICE relies on checkbox-style forms lacking individualized findings; detention decisions are pre-ordained under internal policy discouraging discretionary release; and no meaningful consideration was given to Petitioner's history, community ties, rehabilitation, lack of danger, or alternatives to detention.

67. Courts have repeatedly held that such reflexive detention practices do not satisfy due process.

68. In *Clarke v. U.S. Dep't of Homeland Sec.*, the court found that ICE's process — including false statements, non-responsive affidavits, and refusal to comply with court orders — called into question whether any lawful custody determination occurred at all, thereby supporting habeas relief and immediate release. No. 25-cv-6773 (E.D.N.Y. Dec. 18, 2025).

69. The same concerns are present here.

70. Overall, ICE's conduct undermines confidence in the lawfulness of custody.

71. The government has demonstrated systemic disregard for due process, including failure to conduct lawful custody review; refusal to provide transparency about detention conditions; inconsistent factual assertions; and/or non-compliance with internal standards and court guidance.

72. Where the agency responsible for custody cannot be trusted to apply the law faithfully or protect detainees from unconstitutional treatment, continued detention becomes incompatible with the Constitution.

31

73. As *Clarke* recognizes, in such cases Article III intervention—including court-ordered release—is both appropriate and necessary.

74. For all of these reasons, Petitioner's continued detention constitutes an ongoing violation of the Fifth Amendment. The conditions of confinement, combined with procedural due process violations and the absence of lawful individualized custody review, present extraordinary circumstances that warrant immediate relief and release pending resolution of this habeas petition.

## **THIS COURT SHOULD HOLD THE BOND HEARING OR ORDER RELEASE**

75. Petitioner should be released or be afforded a bond hearing immediately because his detention is governed by 8 USC 1226(a).

76. This Court should maintain jurisdiction over the individualized bond hearing. As supported by existing case law, this Court is authorized to maintain jurisdiction in bond proceedings. In *Leslie v. Holder*, the District Court states "...we are empowered to conduct bail proceedings in habeas corpus proceedings brought by immigration detainees." 3:11-CV-249 * 10 (M.D. PA 2012). The District Court ultimately conducted a bail hearing. (In citing *Leslie v. Attorney General*, 2012 WL 898614 the District Court states "Here, the law of the case, as defined by the mandate of the court of appeals is clear: 'Leslie's appeal will be remanded to the District Court with instructions to conduct an individualized bond hearing as required by Diop within ten days of the date when this opinion and order are filed….") *Id*. at 12. Similarly, the Third Circuit Court of Appeals in *Chavez Alvarez v. Warden York County Prison*, "remanded with instruction to enter an order granting the writ of habeas corpus and ensure that Chavez-Alvarez is afforded, within ten days of the entry of this order, a hearing to determine whether,

32

on evidence particular to Chavez-Alvarez, it is necessary to continue to detain him to achieve the goals of the statute") C*havez Alvarez  v. Warden York County Prison,* 14-1402 * 21 (3rd Cir. 2015).

77. Furthermore, the Court in *Flores-Powell v. Chadbourne*, granted the Petitioner's Habeas Petition, and went on to hold that "the court will conduct a hearing to determine whether Flores is dangerous to the community or a flight risk" 677 F.Supp. 2d 455 (2010). In deciding to conduct the bond hearing, the Court in *Flores-Powell* relied on the reasoning in *Alli v. Decker*, 644 F. Supp. 2d 535 (M.D. Pa. 2009); citing to *Alli's* decision:

> "Supervision of the reasonableness of detention through the habeas process also provides justified protection of the alien's liberty interest and conserves judicial resources. If the remedy for unreasonable detention were an order directing a bond hearing under § 1226(a), an alien who has already demonstrated that his detention is no longer reasonable would remain detained pending an initial custody determination by the DHS district director, 8 C.F.R. § 236.1(d)(1), a hearing before an immigration judge, *id.,* the IJ's decision, and a potential appeal to the BIA, *id.* § 236.1(d)(3). In addition, ... the only recourse for an alien dissatisfied with the outcome of his bond hearing would be to return to court again and file another habeas action. *Cf. Ly,* 351 F.3d at 272. A bond hearing before the habeas court avoids this circuitous and potentially lengthy process. The habeas court's determining whether a petitioner is entitled to release also serves the "`historic purpose of the writ,' namely, `to relieve detention by executive authorities without judicial trial.'" *Zadvydas,* 533 U.S. at 699, 121 S.Ct. 2491. See, *Flores-Powell,* 677 F.Supp 2d 455 (2010).

78. The Court has inherent authority, in a habeas corpus proceeding, to order Petitioner's release on bail where (1) the petition raises substantial claims and (2) extraordinary circumstances exist such that release is necessary to make the habeas remedy effective. *Mapp v. Reno*, 241 F.3d 221, 226–27 (2d Cir. 2001);

79. Therefore, as is clear from existing case law, this Court is well within its jurisdiction to conduct a bond hearing, and it would be in the interest of judicial economy.

## CLAIMS FOR RELIEF

### COUNT ONE
**Violation of 8 U.S.C. 1226(a) and Associated Regulations**

80. Petitioner may be detained, if at all, pursuant to 8 U.S.C. § 1226(a).

81. Under § 1226(a) and its associated regulations, Petitioner must be released or provided with a bond hearing. *See* 8 C.F.R. 236.1(d) & 1003.19(a)-(f).

82. Petitioner's continuing detention is therefore unlawful.

### COUNT TWO
**Violation of Fifth Amendment Right to Due Process**
**(Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a))**

83. Because the Petitioner is a person arrested inside the United States and is subject to detention, if at all, under 8 U.S.C. § 1226(a), the Due Process Clause of the Fifth Amendment to the United States Constitution requires that the Petitioner receives a bond hearing with strong procedural protections. *See Hernandez-Lara*, 10 F.4th at 41; *Doe*, 11 F.4th at 2; *Brito*, 22 F.4th at 256-57.

84. Petitioner has not been, and will not be, provided with a bond hearing as required by law.

85. Petitioner's continuing detention is therefore unlawful.

### COUNT THREE
**Violation of Fifth Amendment Right to Due Process**
**(Failure to Provide an Individualized Hearing for Domestic Civil Detention)**

86. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

87. The Fifth Amendment's Due Process Clause specifically forbids the Government to "deprive[]" any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend. V.

88. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law"); *cf. Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020) (holding noncitizens due process rights were limited where the person was not residing in the United States, but rather had been arrested 25 yards into U.S. territory, apparently moments after he crossed the border while he was still "on the threshold").

89. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. 678 (2001).

90. The Supreme Court has thus "repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing.  *Addington v. Texas*, 441 U.S. 418, 425 (1979) (collecting cases); *see also Salerno*, 481 U.S. at 755 (requiring individualized hearing and strong procedural protections for detention of people charged with federal crimes); *Foucha v. Louisiana,* 504 U.S. 71, 81-83 (1992) (same for civil commitment for mental illness); *Kansas v. Hendricks,* 521 U.S. 346, 357 (1997) (same for commitment of sex offenders).

91. Petitioner was arrested inside the United States and is being held without being provided any individualized detention hearing

92. Petitioner's continuing detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

## COUNT FOUR
### Violation of Fifth Amendment Right to Due Process
### (Substantive Due Process)

93. Because Petitioner is not being provided a bond hearing, the government is not taking any steps to effectuate its substantive obligation to ensure that immigration detention bears a "reasonable relation" to the purposes of immigration detention (*i.e.*, the prevention of flight and danger to the community during the pendency of removal proceedings) and is not impermissibly punitive. *See Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).

94. Petitioner's detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

## COUNT FIVE
### Violation of Fifth Amendment Right to Due Process When Denied a Pre-Deprivation Hearing

95. Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

96. In denying the Petitioner a pre-deprivation hearing, the Respondents violated the Petitioner's Due Process rights under the Fifth Amendment.

36

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Enjoin Respondents from transferring the Petitioner outside the jurisdiction of the Eastern District of New York pending the resolution of this case;

3. Order Respondents to show cause why the writ should not be granted within three days, and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;

4. Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;

5. Declare that Petitioner's detention violates the Immigration and Nationality Act, and specifically 8 U.S.C. § 1226(a);

6. Declare that Petitioner's detention violates the Administrative Procedure Act;

7. Grant a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody on his own recognizance or under parole, bond, or reasonable conditions of supervision, or, in the alternative, order Petitioner's release on bail;

8. Order Respondents to provide Petitioner a pre-deprivation hearing with 48-hours advanced notice before any attempt is made to remove Petitioner from the United States;

9. Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

10. Grant such further relief as this Court deems just and proper.


Dated:    New York, NY                    Respectfully submitted,
          February 26, 2026

By: /s/ Johnathan Kraidman

Johnathan Kraidman, Esq

LAW OFFICE OF PERHAM MAKABI, ESQ

8015 Lefferts Blvd, Suite 1R

Kew Gardens, NY 11415

718-261-6870