UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ERIK SIGFREDO PARADA CRUZ,

          Petitioner,

      v.

MARKWAYNE MULLIN,[1] et al.,

          Respondents.
------------------------------------------------------------------X
RENE ANTONIO BENITEZ,

          Petitioner,

      v.

KENNETH GENALO, et al.,

          Respondents.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
26-CV-1110-SJB

**MEMORANDUM AND ORDER**
26-CV-1122-SJB

**BULSARA, United States District Judge:**

On February 26, 2026, Petitioner Erik Sigfredo Parada Cruz ("Parada Cruz") filed a petition for a writ of habeas corpus. Parada Cruz—a citizen of El Salvador who has lived in the United States since 2008—was arrested on February 26, 2026, by the Department of Homeland Security while on his way to work in Roosevelt, New York.[2] Besides challenging his arrest, Parada Cruz also alleged that his mother, a lawful

---

[1] Mullin has been automatically substituted for his predecessor Kristi Noem. Fed. R. Civ. P. 25(d).

[2] *Parada Cruz*, Pet. for Writ of Habeas Corpus filed Feb. 26, 2026 ("Pet."), Dkt. No. 1 ¶¶ 7, 26, 29. The factual statements herein are drawn from the Petitions; that being said, thus far, Respondents have not contested these facts.

1

permanent resident, filed a Form I-130 that remains pending.[3]  Parada Cruz has four

U.S.-citizen children.[4]  The Court granted the writ provisionally on February 27, 2026,[5]

and issued the following order:

> ORDER: As explained in the attached, the writ is provisionally granted.
> Respondents are directed to effectuate Petitioner's release by **February 27,
> 2026 at 8:00 P.M.** and file a letter on the docket confirming Petitioner's
> release by that time[.]

> Because the Court has serious concerns about the legal basis to detain
> Petitioner in the first instance, including the discrepancies identified herein
> and the continued use of after-the-fact arrest warrants, the Court will hold
> a hearing in this case on **March 5, 2026 at 11:00 A.M. in Courtroom 930 of
> the Central Islip Courthouse**. Petitioner is not required to attend;
> Petitioner's counsel must attend. Counsel for the Government must attend,
> along with the following ICE officers, who should be prepared to testify
> under oath: Kareem Biggs, and the two officers who signed the document
> provided at Exhibit C.

In a separate case, Rene Antonio Benitez ("Benitez") filed a petition seeking

release.  Benitez has lived in New York for 14 years.  He was driving his daughter to

school when an unmarked vehicle pulled them over, and questioned him.[6]  His

daughter explained that she needed to get to school.  "[T]he officers responded that

they did not care about that and that Mr. Benitez would either get out of the car on his

own or they would use force.  Rather than expose his daughter to such violence, Mr.

---

[3] *Id.* ¶ 28.  A Form I-130 is filed by a citizen or lawful permanent resident to assist eligible family members obtain permanent residency status in the United States.

[4] *Id.* ¶ 31.

[5] *Parada Cruz*, Order dated Feb. 27, 2026, Dkt. No. 7.

[6] *Benitez*, Pet. for Writ of Habeas Corpus filed Feb. 26, 2026 ("Pet."), Dkt. No. 1 ¶¶ 8–9.

Benitez exited the vehicle and was promptly detained by the agents. His daughter, however, was forced to remain in the vehicle on her own until a neighbor saw her and took her inside their home."[7] Benitez has no criminal history, and has two daughters—one a lawful permanent resident and one a U.S. citizen.[8] As in *Parada Cruz*, the Court granted the writ provisionally on February 27, 2026,[9] and raised concerns about "the use of pretextual and unconstitutional stops, ongoing abuse of the NTA and arrest warrants process, and legality of the Government's announced use of administrative, non-judicial warrants in this context."[10]

The Court provisionally granted the writ in both cases. As an initial matter, Respondents were relying on a provision of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225, that did not apply to the Petitioners and made the Petitioners' arrests unlawful.[11] And the United States Attorney's Office ("USAO") conceded in both cases they had no new arguments to present beyond those that have already been rejected by this Court.[12] But both cases raise significant, separate constitutional issues that are independent from the legal question of which provision of the INA applies.

---

[7] *Id.* ¶ 9.

[8] *Id.* ¶¶ 8, 10.

[9] *Benitez*, Order dated Feb. 27, 2026, Dkt. No. 7.

[10] *Id.*

[11] *Parada Cruz*, Order dated Feb. 27, 2026 at 2–4; *Benitez*, Order dated Feb. 27, 2026 at 1–3.

[12] *Parada Cruz*, Resp'ts' Letter dated Feb. 27, 2026, Dkt. No. 5 at 2; *Benitez*, Resp'ts' Letter dated Feb. 27, 2026, Dkt. No. 6 at 2.

In both cases, Respondents used arrest warrants to arrest Petitioners. But it appears their use of such warrants was illegal. If ICE is going to use an arrest warrant, then there must be removal proceedings initiated before or at the time of the arrest. Such proceedings are begun through the issuance of a Notice to Appear ("NTA"). There is no "leeway."[13] If ICE wants to use a warrant, it must have a valid NTA in place.

For Parada Cruz, there was only a single NTA ever issued, back in 2005.[14] But that NTA was invalid. It was essentially blank—it had no date or time to appear—and the Supreme Court held such documents were invalid.[15] In addition, in 2019 an immigration judge vacated his removal order, and administratively closed his removal

---

[13] *Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130, at *1 n.3 (E.D.N.Y. Nov. 13, 2025); *see* 8 C.F.R. § 1236.1(b)(1) ("At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest.").

[14] *Parada Cruz*, Order dated Feb. 27, 2026 at 2 n.1 ("Petitioner was issued [an NTA] on August 19, 2005, was ordered removed in absentia on December 6, 2005, and was removed from the United States on November 15, 2007.").

[15] *Id.* ("The [2005] NTA had no date or time in which Petitioner had to appear, a practice subsequently condemned by the Supreme Court[.]" (citing *Pereira v. Sessions*, 585 U.S. 198, 202 (2018) ("A notice that does not inform a noncitizen when and where to appear for removal proceedings is not a notice to appear under section 1229(a)[.]" (quotation omitted)); *Niz-Chavez v. Garland*, 593 U.S. 155, 170–71 (2021); *Campos-Chaves v. Garland*, 602 U.S. 447, 461 (2024) ("Each alien's NTA provided only that the time of the hearing was 'TBD' or 'to be set,' which is the sort of language we found to be inadequate in *Pereira*."))).

proceedings.[16]  Yet, despite the fact that there were no open removal proceedings and there was no valid NTA, ICE arrested him "pursuant to" an I-200 arrest warrant.[17]  Such a warrant can only be issued if there are open removal proceedings reflected in a valid NTA.  In other words, ICE was trying to use an invalid NTA and a rescinded removal order to arrest, despite plain evidence—from its own systems—that it lacked authority to do so.

There is more.  It also appeared that Parada Cruz's arrest warrant was issued *after* he was arrested.[18]  That is the same problem as in *Benitez*.  The paperwork in his case leaves the distinct impression that the NTA and the arrest warrant for him were both issued after he had already been arrested.[19]

Using an after-the-fact warrant to justify a prior arrest is constitutionally problematic.  It also is statutorily prohibited under the INA.  Both practices were condemned by this Court in *Gopie v. Lyons*:

> The NTA begins the removal process, and at that time or after its issuance, the Government can then effectuate his arrest, and, if necessary, detention, until removal proceedings are completed.  *Niz-Chavez v. Garland*, 593 U.S. 155, 157–58 (2021) ("The Illegal Immigration Reform and Immigrant

---

[16] *Id.* at 2 ("Petitioner filed a motion to reopen his immigration proceedings on May 24, 2019, after which an Immigration Judge rescinded the Petitioner's prior removal order, and administratively closed the immigration proceedings against him.").

[17] *Parada Cruz*, Decl. of Kareem Biggs ("Biggs Decl."), Dkt. No. 5-1 ¶ 19.  The I-200 for Parada Cruz only marks the checkbox for biometric identity confirmation and a records check that indicates a lack of lawful status; it does not check boxes to note that removal proceedings were initiated or pending.  *See Parada Cruz*, I-200 Form, attached to Biggs Decl. as Ex. C, Dkt. No. 5-2.

[18] *Parada Cruz*, Biggs. Decl. ¶ 19.

[19] *Benitez*, Decl. of Geraldo Paoli ("Paoli Decl."), Dkt. No. 6-1 ¶¶ 4–6.

Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009–546, requires the government to serve 'a notice to appear' on individuals it wishes to remove from this country."). 8 C.F.R. § 1236.1 provides, in relevant part, "[a]t the time of issuance of the notice to appear, or at any time thereafter . . . the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 1236.1.[20]

At bottom, "ICE does not have free-ranging ability to arrest and detain people, and figure out the reasons later, like they apparently did here."[21]

To determine what happened in these cases, the Court scheduled evidentiary hearings, first to take place on March 4, 2026 for *Benitez* and March 5, 2026 for *Parada Cruz*, then, at the USAO's request, adjourned them for several weeks. The purpose of the hearings was to determine the full factual landscape of the detention in both cases, including through testimony from the ICE officers involved in these arrests. Another relevant purpose was to probe the declarations submitted by ICE officers, which appear to be substantially similar to those submitted in other cases in this District, and that

---

[20] *Gopie*, 2025 WL 3167130, at *1.

[21] *Id.* at *3; *see also Castañon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 850–53 (N.D. Ill. 2025) (rejecting proposition that ICE may issue warrants immediately upon identifying a noncitizen unlawfully present in the United States).

have been found to be "demonstrably false."[22]  But as detailed herein, the USAO is now seeking to prohibit any further factual inquiry, and forestall development of a complete record of their clients' conduct.

The USAO seeks to adjourn both evidentiary hearings and have the Petitions dismissed—asserting three basic arguments: (1) the matters are moot and this Court lacks jurisdiction to have a hearing; (2) the Court is violating the party presentation principle; and (3) Respondents have no obligation to comply with *Gopie*, in this or any other case, because no injunction has been issued, and the Court lacks the power to force ICE to comply with the decision.  The Court finds the USAO's arguments misguided, troubling, and in some instances, frivolous.

*First*, *Gopie*.  To be sure, the decision in *Gopie*, rendered by a single judge, in a case involving an individual, applies only to that individual.  But that is surely to lose the forest in the shadows of imaginary trees.  I have rendered many a decision—double digits at this point—as have other judges in this District, pointing out that ICE agents have been arresting individuals in this District and figuring out the reasons

---

[22] *Clarke v. U.S. Dep't of Homeland Sec.*, No. 25-CV-6773, 2025 WL 3674471, at *4 (E.D.N.Y. Dec. 18, 2025); *see also Mira Castro v. Noem*, -- F. Supp. 3d --, No. 26-CV-0696, 2026 WL 369713, at *4 (E.D.N.Y. Feb. 10, 2026) (noting the "arresting officer falsely asserted that [petitioner's] work authorization was invalid and thereafter arrested him without a warrant and detained him"); *Minarcaja Concha v. Lyons*, -- F. Supp. 3d --, No. 25-CV-6695, 2026 WL 307170, at *3 (E.D.N.Y. Feb. 4, 2026) (finding that an ICE officer submitted false statements about petitioner's location, after he had been transferred in violation of court orders); Tr. dated Mar. 4, 2026 at 46:5–47:24, *Ruano Leiva v. Shanahan*, No. 26-CV-1162 (E.D.N.Y.) (discussing material omissions from arrest records and ICE officer's declaration that there were additional people in the car they stopped that were also detained and questioned, along with petitioner).

afterwards.[23]  In not one of these cases before the undersigned has the USAO cited a case, regulation, or legal principle that would permit this practice.[24]  And Respondents have not appealed one of those decisions, or sought a stay or reconsideration.  The silence is deafening.  Respondents have arrested individuals, detained them, and then afterwards issued arrest warrants that document the basis for the arrest.  Sadly, ICE's own "testimony confirmed that this illegal practice has become standard procedure for ICE enforcement efforts in this district."[25]

The USAO says *Gopie* does not apply to petitioners subject to mandatory detention under § 1225, and in those cases, the Government may be able to arrest individuals without a warrant.[26]  The argument is irrelevant.  First, in none of these cases have Respondents proceeded on a warrantless basis.  Having issued warrants—presumably because they believed they were required to—they cannot justify detention

---

[23] A list of such cases is attached to this opinion as Appendix A.  The appendix only contains cases where the issue of an after-the-fact warrant or NTA was referenced in a decision granting release.  It is not a comprehensive compilation.  And there may be many other cases—of the hundreds of petitions filed in this District—where the conduct was present, but not part of the disposition.

[24] Even the BIA decision that the USAO has relied on to justify detention and arrest under section 1225 in federal courts throughout the country disavows the ability of ICE to use post-hoc arrest warrants.  *Matter of Li*, 29 I. & N. Dec. 66, 69 n.4 (BIA 2025) ("The regulation implementing DHS' authority to conduct arrests under section [1226(a)] authorizes a prospective arrest and contemplates that the subject of the warrant has not yet been arrested and taken into custody at the time the warrant is issued.  Indeed, the Supreme Court has recognized that a warrant issued under section [1226] is one leading to the alien's arrest." (quotation and citation omitted)).

[25] *Sanchez Alfaro v. Mullin,* No. 26-CV-0766, 2026 WL 734348, at *5 (E.D.N.Y. Mar. 16, 2026).

[26] *E.g.*, *Parada Cruz*, Mot. to Dismiss dated Apr. 8, 2026, Dkt. No. 12 at 3 n.1.

by relying on an alternative procedure they opted not to use, and wave away the warrants as unnecessary. The fact is warrants were used and relied on by the officers for the detention and the USAO in their papers opposing the habeas petitions. Bad facts cannot be ignored to create fictional and alternative realities.[27] Second, the Court has already ruled—as have hundreds of other judges, that people like Petitioners are being detained pursuant to 8 U.S.C. § 1226(a), a law that, subject to exceptions inapplicable here, requires a warrant to detain, not § 1225.[28]

---

[27] *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21, 24 (2020) (holding that "[t]he basic rule here is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," and a decision will not be upheld based on "impermissible *post hoc* rationalization" (quotation omitted)); *see also Lincoln v. Turner*, 874 F.3d 833, 842 (5th Cir. 2017) ("[P]ost-hoc justifications based on facts later learned cannot support an earlier arrest.").

[28] *See* 8 U.S.C. § 1226(a) (authorizing arrest and detention "[o]n a warrant issued by the Attorney General"). Even the warrantless procedure may have been abused in these cases. The statute the USAO cites, 8 U.S.C. § 1357, allows warrantless arrests when a person "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). Tellingly, no such fact is in either ICE declaration submitted in these two cases.

Separately, "[a]n immigration officer . . . has the right to ask questions of anyone as long as the immigration officer does not restrain the freedom of an individual, not under arrest, to walk away." 8 C.F.R. § 287.8(b)(1). And officials have the power only to "briefly detain [an individual] for questioning" if they have "a reasonable suspicion, based on specific articulable facts," that the person is illegally in the United States. *Id.* § 287.8(b)(2); *see Singh v. Mukasey*, 553 F.3d 207, 215 n.4 (2d Cir. 2009); *cf. Vazquez-Medrano v. Sessions*, 726 F. App'x 92, 93 (2d Cir. 2018) (finding no violation because petitioner did not allege that he was detained before immigration officials learned that his presence in the country was unlawful). In other words, the facts here suggest that Respondents went well beyond their limited authority to stop Petitioners for questioning and engaged in detention without any legal basis to do so: Benitez, for example, alleges that he was pulled over and questioned, told he was going to be arrested, and told that he could either get out of his car on his own, or the ICE officers would use force against him. *Benitez*, Pet. ¶ 9.

This practice of after-the-fact arrest warrants can be called many things—illegal, improper, and unconstitutional, among them.  But whatever label one wishes to apply, the practice is fundamentally at odds with and offensive to lawful, constitutional behavior in this country.  "An arrest is not justified by what the subsequent search discloses[.]"[29]  A contrary rule—the one that the USAO here defends by backing detention and opposing release—"would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law."[30]

Police and law enforcement cannot operate as roving bands, detaining individuals, figuring out the reasons later, and papering over their failures afterwards.  This sadly is the practice in many other parts of the world.  But in the United States, the law prohibits such conduct.

So, the USAO, which has its own obligation to uphold the Constitution, would surely take it seriously when such plain misconduct is brought to its attention.  And then take steps—regardless of whether a court has ordered such relief—to prevent such illegality from reoccurring.  (Certainly, if this were a criminal case, if an FBI or other law-enforcement agent had been presenting cases where there were illegal arrests, no matter the underlying crime, the USAO would in no uncertain terms tell the agency to

---

[29] *Henry v. United States*, 361 U.S. 98, 103 (1959) ("When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete.  It is, therefore, necessary to determine whether at or before that time they had reasonable cause to believe that a crime had been committed.").

[30] *Johnson v. United States*, 333 U.S. 10, 17 (1948) (Jackson, J.).

clean up its act.)  Yet, it appears—from the many, many cases finding *Gopie*-type

violations—the practice has continued unabated for months.  "ICE officers . . . have

openly admitted . . . that the administrative arrest warrant and related NTA were issued

*after* the arrest in question.  Courts across the country have rejected and condemned this

manifestly illegal practice by ICE officers."[31]

Letters like the ones filed in these cases—telling the Court essentially it no

longer has any jurisdiction and should look no further—suggest that the USAO has

done nothing to tell ICE to stop the identified practices.[32]  Here, the USAO first sought

to delay and adjourn the hearings because of the need to consult with ICE.[33]  What

followed was not an attempt to explain, justify, or contextualize the illegal practices

identified in *Gopie* or the post hoc NTAs and arrest warrants, but the legal missive

discussed here.  (Indeed, when another District Judge gave the USAO three weeks to

advise the Court what steps it would take to comply with his order identifying

constitutional misconduct and imposing remedial relief, the USAO asked for a month-

long extension to file a motion for reconsideration and asked for an indefinite stay of its

---

[31] *Garcia Lanza v. Noem*, -- F. Supp. 3d --, No. 26-0029, 2026 WL 585130, at *5 (E.D.N.Y. Mar. 3, 2026) (emphasis in original) (collecting cases).

[32] The USAO misapprehends *Gopie* when it tries to say it disagrees with this Court, because it has a different view about whether someone can be detained under 8 U.S.C. § 1225, and not 8 U.S.C. § 1226.  The point is that regardless of what statutory authority is used to arrest someone, issuance of NTAs and warrants post-arrest to create post hoc justifications violates due process.

[33] *Parada Cruz*, Resp'ts' Mot. to Adjourn dated Mar. 2, 2026, Dkt. No. 9; *Benitez*, Resp'ts' Mot. to Adjourn dated Feb. 28, 2026, Dkt. No. 10.

obligations, suggesting it had no intention of complying.[34])  Of course, if Respondents

never change their conduct, and the USAO behaves like it has never lost, it will

continue to lose cases.  (Such intransigence is the plain import of its own dismissive

statement that only "this Court" — but ostensibly not Respondents or the USAO — is

guided by *Gopie*.[35])  But such positions come at tremendous cost — besides the human

toll on the individuals who are illegally detained for hours, days, and months in

unspeakable conditions at places like the Metropolitan Detention Center ("MDC")[36] — in

---

[34] *See* Order dated Mar. 30, 2026, *Sanchez Alfaro v. Almodovar*, No. 26-CV-0766 (E.D.N.Y.).  The stay application was denied.

[35] *Parada Cruz*, Resp'ts' Mot. to Dismiss dated Apr. 8, 2026, Dkt. No. 12 at 3; *Benitez*, Resp'ts' Letter dated Apr. 7, 2026, Dkt. No. 12 at 3.

[36] *See Flores v. Mullin*, No. 26-CV-1855, 2026 WL 948298, at *3 (E.D.N.Y. Apr. 8, 2026) ("'ICE detained Petitioner at the Metropolitan Detention Center in Brooklyn, a facility so notoriously plagued with issues arising from overcrowding and underfunding that judges in this Circuit have reduced or modified sentences for convicted criminals based on the conditions of confinement there.' . . . Indeed, if judges in this district and the Southern District of New York have regularly reduced sentences for dangerous, violent criminals based upon the conditions at MDC, it would seem obvious that such a facility would not be appropriate for civil detainees like petitioner." (quoting *Sanchez Alfaro*, 2026 WL 734348, at *4 (collecting cases))); *e.g.,* Resp'ts' Letter dated Mar. 4, 2026, *Abreu v. Genalo*, No. 26-CV-1181 (E.D.N.Y.), Dkt. No. 7 at 2 (noting that petitioner had been held at the MDC since July 21, 2025 — until the Court granted the writ on March 4, 2026).

the form of loss of confidence in the Government lawyers who appear in this District.[37]

That is not just in the credibility of their presentations, but in the belief and

understanding that lawyers for the Government are not just like other lawyers. The

USAO has already been described by this Court and others of playing whack-a-mole

with people's lives[38] by trying to forum-shop habeas cases out of this District. That loss

is accentuated when the USAO seeks to shroud in darkness the conduct of the ICE

officers here. Its view is that the Court should not even hold a hearing to determine the

basic facts of Petitioners' detentions. No final remedy has been suggested, by the Court

or anyone else. And none beyond a final granting of the writ may be appropriate. Yet,

the USAO delays or finds excuses to avoid producing officers for a basic fact-finding

hearing. And these are not the only cases where it has taken the same approach.[39] Such

hide-the-ball litigation tactics corrode both the Court's and the public's confidence that

Respondents are even trying notionally to adhere to constitutional requirements.

---

[37] For example, in one case before the undersigned, a 64-year-old man who has lived in the United States for 23 years, who is blind and the primary caretaker of his 85-year-old mother (who is a U.S. citizen, as are his siblings), was arrested while getting coffee, after law enforcement asked if he recognized someone in a photograph, and he answered in Spanish. Pet. for Writ of Habeas Corpus, *Gonzalez Franco v. Almodovar*, No. 26-CV-1429 (E.D.N.Y. Mar. 11, 2026), Dkt. No. 1 ¶¶ 22–23. He had no criminal history, but was detained at the MDC from January 30, 2026, until the Court granted the writ on March 12, 2026. Order dated Mar. 12, 2026, *Gonzalez Franco v. Almodovar*, No. 26-CV-1429 (E.D.N.Y.).

[38] *Flores-Linares v. Bondi*, No. 26-CV-0298, 2026 WL 179208, at *1 (E.D.N.Y. Jan. 22, 2026).

[39] Order dated Feb. 10, 2026, *Franco v. Lyons*, No. 26-CV-0508 (E.D.N.Y.) (noting that the Government voluntarily released the petitioner days before a hearing seeking testimony from ICE officers was scheduled to take place, and canceling the hearing at the USAO's request).

This is not to say that the position of the USAO is not difficult—caught between its obligations to the Court, the public, and the Constitution on one hand and the demands of ICE on the other.[40]  But here, we are not talking about the USAO being forced to mimic the unreasonable position of its client agency.  The USAO's approach here—suggesting it does not have any obligation to revise plainly unconstitutional practices, even if they have been documented in case after case, *and* it can try to avoid a fact-finding hearing—badly confuses the obligation of a Government lawyer with that of any private advocate.  "A government lawyer 'is the representative not of an ordinary party to a controversy,' the Supreme Court said long ago in a statement chiseled on the walls of the Justice Department, 'but of a sovereignty whose obligation . . . is not that it shall win a case, but that justice shall be done.'"[41]  "The Supreme Court was speaking of government prosecutors in *Berger*, but no one . . . has suggested that the principle does not apply with equal force to the government's civil lawyers."[42]  And this obligation means, at a minimum, that the USAO has "a duty to

---

[40] *See Zimmerman v. Schweiker*, 575 F. Supp. 1436, 1440 (E.D.N.Y. 1983) (Weinstein, C.J.) ("There is often a special excruciating problem for the government attorney.  He or she cannot fire a client who will not take the litigator's advice, nor can the client discharge the government attorney.").

[41] *Freeport-McMoRan Oil & Gas Co. v. F.E.R.C.*, 962 F.2d 45, 47 (D.C. Cir. 1992) (Mikva, C.J.) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

[42] *Id.*; *see also Silverman ex rel. N.L.R.B. v. Ehrlich Beer Corp.*, 687 F. Supp. 67, 69–70 (S.D.N.Y. 1987) ("[A]n attorney in the employ of the government is not on the same footing as a private attorney.  He or she has the august majesty of the sovereign behind his or her every utterance . . . . As a result, the attorney representing the government must be held to a higher standard than that of the ordinary lawyer.").

refuse to assist the client in violating its fiduciary duty to the public or in otherwise acting lawlessly."[43]

*Second*, the USAO's position that the "party presentation principle" prevents a hearing is frivolous.   Recall that here the Petitioners argued in numerous ways that their detention violated their due process rights.[44]  In Parada Cruz's Petition, he cited to *Clarke*,[45] which found that Respondents were acting unlawfully based on the standards articulated in *Gopie*.[46]  And then, in response to both Petitions, the USAO *itself* cited *Gopie*.[47]  But now, the USAO argues that it violates the party presentation principle to ask how the arrests here conformed with *Gopie* or the Constitution.

There is more.  The USAO submitted declarations from ICE officers that recount the facts of Parada Cruz's and Benitez's arrests, including the issuance of NTAs and arrest warrants and the circumstances of the initial detention.[48]  Despite this, Respondents tell this Court that it should cancel the hearing and that it should not question the very ICE officers who submitted these declarations.  The party presentation principle is not a cudgel to be tossed around by lawyers haphazardly as a

---

[43] Bruce A. Green, *Must Government Lawyers "Seek Justice" in Civil Litigation?*, 9 Widener J. Pub. L. 235, 269–70 (2000).

[44] *E.g.*, *Parada Cruz*, Pet. ¶¶ 59–74; *Benitez*, Pet. ¶¶ 21–26.

[45] *Parada Cruz*, Pet. ¶¶ 68, 73 (citing *Clarke*, 2025 WL 3674471).

[46] *Clarke*, 2025 WL 3674471, at *8.

[47] *Parada Cruz*, Resp'ts' Letter dated Feb. 27, 2026, Dkt. No. 5 at 2 n.2; *Benitez*, Resp'ts' Letter dated Feb. 27, 2026, Dkt. No. 6 at 2.

[48] *Parada Cruz*, Biggs Decl. ¶¶ 18–19; *Benitez*, Paoli Decl. ¶¶ 4–6.

cavil to a decision with which they disagree or as a shield against inquiry into facts a litigant would rather hide. The doctrine is simply inapposite.

The USAO also appears to misunderstand the writ of habeas corpus. It has been settled law for over a century that a district court may, indeed must, inquire about the factual basis for an individual's detention. And hold a hearing to do so: "[t]he court *shall* summarily hear and determine the facts, and dispose of the matter as law and justice require."[49] As the Supreme Court reiterated in 1968: "[I]n *Moore v. Dempsey*, 261 U.S. 86 (1923), this Court had recognized that a district court was authorized to look behind the bare record of a trial proceeding and conduct a factual hearing to determine the merits of alleged deprivations of constitutional rights[.]"[50] In other words, the writ—given its constitutional salience and dimension—necessarily invites examination of the circumstances and facts of how and under what authority someone was detained. And that is precisely what this Court's orders are about: "Because the Court has serious concerns about the legal basis to detain Petitioner in the first instance, including the discrepancies identified herein and the continued use of after-the-fact arrest warrants, the Court will hold a hearing in this case[.]"[51]

The *third* argument reads like the first two: an attempt to avoid examination of the underlying conduct that gave rise to the Petitions. The USAO objects to further

---

[49] 28 U.S.C. § 2243 (emphasis added).

[50] *Peyton v. Rowe*, 391 U.S. 54, 60 (1968) (cleaned up).

[51] *Parada Cruz*, Order dated Feb. 27, 2026.

proceedings because the cases are in its view "moot" and the Court cannot grant any other remedy to Petitioners.  It is incorrect on all counts.

For one thing, the Court only provisionally granted the writs, meaning it still must determine whether its preliminary conclusion—that release was required based on illegal detention—should be made final.[52]  Indeed, the USAO understands this: it asks the Court to make its prior decisions final and to enter judgment.[53]  It may be that the condition the Court imposed on Respondents—that they are prohibited from "detaining Petitioner absent further direction from this Court"[54]— is no longer appropriate because there is little to no risk of an illegal re-detention of either Petitioner. Conversely, it may be appropriate to keep that condition "to ensure that the release of

---

[52] *Cf. Nielsen v. Preap*, 586 U.S. 392, 403 (2019) (rejecting mootness argument because "[u]nless that preliminary injunction was made permanent and was not disturbed on appeal, these individuals faced the threat of re-arrest and mandatory detention").

[53] *Parada Cruz*, Resp'ts' Mot. to Dismiss at 2–3; *Benitez*, Resp'ts' Letter dated Apr. 7, 2026 at 3.

[54] *Parada Cruz*, Order dated Feb. 27, 2026; *Benitez*, Order dated Feb. 27, 2026.

[petitioners] . . . is not rendered meaningless."[55]  Such determinations cannot be made

without understanding the facts that were the basis for the conduct in the first place.

But the USAO is unwilling to allow the hearings necessary for such determinations to

proceed.

A hearing may also reveal that additional relief is warranted.  As noted, it

appears in *Parada Cruz* that Respondents may have been attempting to rely on a

rescinded order, an invalid NTA, and closed removal proceedings to issue a warrant.[56]

In other words, prior judicial decrees of an immigration judge and the Supreme Court

have already been ignored.  Having done so once, they have made no representation

that they intend to cease such practices.  And frankly, given the long pattern in case

---

[55] *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 321 (E.D.N.Y. 2025) (concluding such relief falls within the "core of habeas"); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 495 (S.D.N.Y. 2025) ("As to the second prong of the *Mathews v. Eldridge* balancing test . . . Mr. Lopez Benitez's re-detention without any individualized assessment such as any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest." (quotation omitted)); *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018) ("Fundamental principles of due process—specifically, the procedural safeguards of the Fifth Amendment—entitle Lopez to a neutral hearing at which the government presents evidence of changed circumstances requiring redetention."); *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 373 (S.D.N.Y. 2019) ("As Petitioner's arrest and detention were blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore Plaintiff is to immediate[ly] release him and enjoin the Government from further similar transgressions."); *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 495 (E.D.N.Y. 2025) ("The Court further orders that [petitioner] shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a).").

[56] The only NTA in that case was declared invalid by the Supreme Court and an immigration judge closed proceedings.  There is no other NTA that could permit issuance of a warrant.

after case,[57] where the same agency has engaged in the same illegal conduct, in over 30 cases in this District in just the last four months, it is difficult to take seriously any suggestion that the conduct complained of here will not reoccur and affect these Petitioners again.

"[C]ases do not become moot 'merely because the [defendant's] conduct immediately complained of has terminated, if there is a possibility of a recurrence which would be within the terms of a proper decree.'"[58] "[W]here the Government submits a statement that the petitioner will not be re-detained, release may well render a *habeas* petition moot. Here, the Government has submitted no such statement."[59] In other words, reuse of invalid documents and warrants — as defective as they are — remain more than just in the ether. (This Court cannot make removal proceedings go away — that's beyond its jurisdiction,[60] — but it can review whether the arrest and

---

[57] *See* Appendix A.

[58] *Armster v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 806 F.2d 1347, 1357 (9th Cir. 1986) (quoting Paul Bator, Paul Mishkin, David Shapiro, & Herbert Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System* 110 (2d ed. 1973)).

[59] *Farez-Espinoza v. Napolitano*, No. 08-CV-11060, 2009 WL 1118098, at *7 (S.D.N.Y. Apr. 27, 2009) (citation omitted).

[60] *See* 8 U.S.C. § 1252.

detention violated due process.[61])  And where the USAO releases a person when the

Government's conduct is found illegal, but persists in engaging in the same misconduct,

and upon filing of a new petition, it seeks dismissal by simply consenting to release, or

as it does in this District, conceding it has no new arguments to present, such voluntary

cessation merely hides misconduct from judicial review.  And that is the exact opposite

of a moot case.[62]

For another, the USAO again misapprehends the writ.  "Habeas corpus, as the

Supreme Court has said, is an 'adaptable remedy,' the 'precise application and scope' of

---

[61] *See Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("Noncitizens are also entitled to challenge through habeas corpus the legality of their . . . detention."); *e.g.*, *Basank v. Decker*, 613 F. Supp. 3d 776, 784 (S.D.N.Y. 2020) ("But for the Court's order restraining Respondents from rearresting Petitioners, Respondents would presumably seek to detain Petitioners anew.  Therefore, a live case or controversy continues to exist as the Court considers whether to convert its TRO into a preliminary injunction—a step Respondents vigorously oppose.").

[62] "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. . . . [T]he rule traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."  *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) (quotations omitted); *e.g.*, *Farez-Espinoza*, 2009 WL 1118098, at *7 (applying voluntary cessation exception where individual had already been released from ICE custody).  Separately, a case is not moot if the underlying dispute between the parties is capable of repetition yet evading review. *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998); *e.g.*, *Petrova v. U.S. Dep't of Homeland Sec.*, 807 F. Supp. 3d 313, 332 (D. Vt. 2025) (applying capable of repetition yet evading review exception in an immigration habeas case because the issue may not be decided if the individual is quickly removed); *cf. Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 29 (D.D.C. 2020) ("In the immigration context, courts have consistently recognized the compelling concern that an agency whose removal practices are challenged in court can effectively insulate itself from judicial review by acting quickly to issue Notices to Appear or to expedite removal, and then arguing that the court thereby lacks jurisdiction over those plaintiffs' legal claims.").

which changes 'depending upon the circumstances.'"[63]  "The equitable and flexible

nature of habeas relief also gives the reviewing court considerable latitude to correct

errors that occurred during the prior proceedings."[64]  Indeed, "the habeas court must

have the power to order the conditional release of an individual unlawfully detained—

though release need not be the exclusive remedy[.]"[65]

A habeas court's scope and powers "depend[] upon the rigor of any earlier

proceedings"—and they are at their maximum where an individual has been detained

with "little or no previous judicial review of the cause for detention."[66]  This Court's

mandate to undertake "the most searching review . . . take[s] on particular significance

when . . . [petitioner] was not 'detained'; he was, in fact, incarcerated under conditions

indistinguishable from those imposed on criminal defendants sent to prison following

convictions for violent felonies and other serious crimes," with few, if any, procedural

---

[63] *Velasco Lopez*, 978 F.3d at 855 (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008)).

[64] *Id.* (quotation omitted).

[65] *Boumediene*, 553 U.S. at 779.

[66] *Id.* at 780–81; *cf. Jimenez v. Stanford*, 96 F.4th 164, 191 (2d Cir. 2024) ("For instance, we have held that in habeas petitions by civil immigration detainees, the government must justify a civil immigration detention by clear and convincing evidence because the Supreme Court has consistently held the Government to a higher standard of proof . . . where liberty is at stake.  But that is because the necessary scope of habeas review and resulting relief in part depends upon the procedural rigor of any earlier proceeding, and the most searching review is called for when detention occurs *without* the procedural protections required in courts of law." (quotations omitted)); *Luna v. Holder*, 637 F.3d 85, 96 (2d Cir. 2011) ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001))).

protections.[67]  And in the circumstances of these two Petitions, where the executive detention appears facially unlawful and violates basic due process protections, the habeas court must have "some authority to assess the sufficiency of the Government's evidence."[68]

Of course, there are limits.  In the immigration context, a petitioner cannot obtain relief "far beyond the 'core' of habeas as a remedy for unlawful executive detention."[69] But such limits derive from requests for orders requiring petitioners to be brought to this country[70] or vacatur of a removal order coupled with a separate order directing the Government to permit the petitioner another chance to apply for asylum.[71]  No such request is present in this case (nor is such relief being contemplated by the Court).  The Court's direction that a fact-finding hearing be held is a basic inquiry into the lawfulness of Petitioners' detention.

*     *     *

Quite separate from jurisdictional issues, the Court's approach is warranted by the potential need for sanctions.  "As part of [its] inherent power, a court can . . . vacate its own judgment upon proof that a fraud has been perpetrated upon it," or "impose

---

[67] *Velasco Lopez*, 978 F.3d at 850.

[68] *Boumediene*, 553 U.S. at 786.

[69] *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 127 (2020) (quotation omitted).

[70] *Id.* at 119 (citing *Munaf v. Geren*, 553 U.S. 674 (2008)).

[71] *Id.* at 117–18.

monetary sanctions against a litigant (or its counsel) for misconduct."[72] Because of the "potency" of the Court's inherent powers, they "must be exercised with restraint and discretion"—for example, before imposing monetary sanctions, courts must make specific factual findings of bad faith.[73] And to make such factual findings may require "admitting and weighing evidence, [and] assessing witness credibility."[74]

The Court has observed in its orders in these cases and others, that declarations submitted by ICE officers with Respondents' submissions appear to intentionally obfuscate when exactly an NTA or arrest warrant was issued so the Court cannot determine whether they were validly promulgated and whether an individual's detention was effectuated *after* the issuance of the NTA and warrant.[75] In Parada Cruz's case, there is an additional question of whether ICE agents detained him—and justified the detention in a sworn statement to this Court—pursuant to an invalid NTA and a removal order that had been rescinded.[76] Whether sanctions are warranted in this case is a determination for a later day. But it is certainly a matter that can be the subject of additional hearings and witness testimony.

---

[72] *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021) (quotation omitted)

[73] *Id.* at 368.

[74] *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 142 (2d Cir. 2023).

[75] *E.g.*, *Benitez*, Order dated Feb. 27, 2026 at 3 n.1; Order dated Apr. 13, 2026 at 3 n.1, *Cordova Garcia v. Maldonado Jr.*, No. 26-CV-2102 (E.D.N.Y.).

[76] *Parada Cruz*, Biggs Decl. ¶¶ 16–19.

*    *    *

The Court will hold an evidentiary hearing on **April 30, 2026 at 10:00 A.M.**, in both cases.  The following ICE officers must be present to testify: Kareem Biggs, the two officers who signed the February 26, 2026 arrest warrant for Parada Cruz provided with Respondents' submission, Geraldo Paoli, and the officers identified as "J 4879 John – (A) SDDO" and "J 10425 Chacon" on the NTA for Benitez provided with Respondents' submission.  Petitioners' counsel should be prepared to lead the questioning of these witnesses, followed by cross-examination by Respondents' counsel.  Agency counsel for ICE is also directed to appear.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   April 16, 2026
        Central Islip, New York

24

<u>Appendix A</u>

1. *Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (noting the Government issued an arrest warrant "well before it issued a NTA for Gopie").

2. *Arango v. Genalo*, No. 25-CV-6720, 2025 WL 3637500, at *2 (E.D.N.Y. Dec. 16, 2025) ("Arango was not served with a I-862 Notice to Appear ('NTA') until *two days after her arrest*, which was too late.").

3. *Clarke v. U.S. Dep't of Homeland Sec.*, No. 25-CV-6773, 2025 WL 3674471 (E.D.N.Y. Dec. 18, 2025), at *2 ("There remains a serious question as to whether the NTA preceded Clarke's arrest; if not, then ICE improperly arrested him.").

4. *Pesantez Castro v. Maldonado*, No. 25-CV-6844, 2025 WL 3723966, at *1 n.2 (E.D.N.Y. Dec. 23, 2025) ("Petitioner has also established—and Respondents do not clearly contest—that Petitioner was not served with either a NTA or an arrest warrant at the time of his arrest, but instead was served with them at some point thereafter.").

5. *Delarca-Avila v. Bondi*, No. 26-CV-0543 (E.D.N.Y.) (Order dated Feb. 2, 2026 at 4 n.1).

6. *Garcia Cortez v. Francis*, No. 26-CV-0570 (E.D.N.Y.) (Order dated Feb. 3, 2026 at 3 n.1).

7. *Munoz Caraguay v. LaRocco*, -- F. Supp. 3d --, No. 26-CV-0569, 2026 WL 294842, at *4 (E.D.N.Y. Feb. 4, 2026) ("Moreover, it was only when Mr. Munoz Caraguay was already in jail for 'processing' that ICE served him with an arrest warrant, as shown by the face of the warrant, which indicates that it was served on Mr. Munoz Caraguay in East Meadow, New York—not in Freeport, where he was arrested.").

8. *Ambroladze v. Maldonado*, No. 26-CV-0473, 2026 WL 295405, at *1 (E.D.N.Y. Feb. 4, 2026) ("Respondents arrested and detained Petitioner "without a warrant, without prior notice, without explanation, and without any individualized assessment of risk." (quotation omitted)).

9. *Castellon v. Doe*, No. 26-CV-0647, 2026 WL 326947, at *4 (E.D.N.Y. Feb. 7, 2026) ("ICE officers conducted a warrantless arrest of Mr. Aguinaga Castellon. ICE officers then transported Mr. Castellon to the Central Islip Hold Room, where they served him with a Form I-200 Warrant." (citation omitted)).

10. *Mohd v. Noem*, No. 26-CV-0680, 2026 WL 363525, at *4 (E.D.N.Y. Feb. 9, 2026) ("However, the face of the Form I-200 Warrant plainly identifies 'East Meadow, New York'—the location of the Nassau County Correctional Center, where ICE first transported Mr. Mohd after his arrest—as the location where ICE served the warrant on Mr. Mohd, not Hempstead, where ICE officers arrested him.").

11. *Mira Castro v. Noem*, -- F. Supp. 3d --, No. 26-CV-0696, 2026 WL 369713, at *4 (E.D.N.Y. Feb. 10, 2026) ("The arresting officer falsely asserted that Mr. Mira Castro's work authorization was invalid and thereafter arrested him without a warrant and detained him.").

12. *Bonilla-Romero v. Bondi*, No. 26-CV-0796 (E.D.N.Y.) *(Order dated Feb. 13, 2026 at 3 n.1).

13. *Argueta Diaz v. LaRocco*, No. 26-CV-0975 (E.D.N.Y.) (Order dated Feb. 20, 2026 at 3 n.1).

14. *Sosa-Rodriguez v. Noem*, No. 26-CV-0981 (E.D.N.Y.) (Order dated Feb. 20, 2026 at 3 n.1).

15. *Bonilla v. Bondi*, No. 26-CV-0757, 2026 WL 485283, at *4 (E.D.N.Y. Feb. 20, 2026) ("As a threshold matter, Mr. Bonilla has never been subject to removal proceedings and, at this time, there are no pending removal proceedings against him. . . . [T]he face of the Form I-200 Warrant plainly identifies '100 Carman Avenue, East Meadow, New York'—the address of the Nassau County Jail, where ICE first transported Mr. Bonilla after his arrest—as the location where ICE served the warrant on Mr. Bonilla, not Hempstead, where ICE officers arrested him.").

16. *Parada Cruz v. Noem*, No. 26-CV-1112, 2026 WL 555038, at *4 (E.D.N.Y. Feb. 27, 2026) ("An arrest warrant was not served on him until after he had arrived at the Nassau County Correctional Center, as shown by the face of the warrant, which indicates that it was served on Mr. Parada Cruz at 100 Carmen Avenue in East Meadow, New York—not in Roosevelt City, New York, where ICE arrested him.").

17. *Garcia Lanza v. Noem*, -- F. Supp. 3d --, No. 26-CV-0029, 2026 WL 585130, at *5 & n.6 (E.D.N.Y. Mar. 3, 2026) ("In this case, ICE officers have grossly abused this authority—apprehending an individual for undefined reasons and then issuing an administrative arrest warrant and an NTA. ICE officers have done so unabashedly—they have openly admitted that they arrested the wrong man and that the administrative arrest warrant and related NTA were issued *after* the arrest in question. Courts across the country have rejected and condemned this manifestly illegal practice by ICE officers.") (collecting cases).

18. *Ruano Leiva v. Shanahan*, No. 26-CV-1162 (E.D.N.Y.) (Transcript dated Mar. 4, 2026 at 21:6-25) (USAO explaining that the basis for petitioner's detention changed when ICE discovered, after arresting and detaining petitioner, that he was subject to an order of removal).

19. *Mayorga Lopez v. Noem*, No. 26-CV-1201, 2026 WL 621926, at *4 (E.D.N.Y. Mar. 5, 2026) ("[T]here is absolutely nothing in the record showing that Mr. Mayorga Lopez presents a flight risk or danger to the community or even that there were any pending removal proceedings at the time of his warrantless arrest.").

20. *Gonzalez Franco v. Almodovar*, No. 26-CV-1429 (E.D.N.Y.) (Order dated Mar. 12, 2026 at 3 n.1).

21. *Zapata v. Genalo*, No. 26-CV-1365, 2026 WL 697544, at *5 n.8 (E.D.N.Y. Mar. 12, 2026) ("The Court notes that ICE did not serve Mr. Ilma Zapata with an arrest warrant until after he had arrived at the Nassau County Correctional Center, as shown by the face of the warrant, which indicates that it was served on Mr. Ilma Zapata in East Meadow, New York—not in Farmingdale, New York, where ICE arrested him.").

22. *Aparicio v. Genalo*, No. 26-CV-1411, 2026 WL 698872, at *4–*5 (E.D.N.Y. Mar. 12, 2026) (noting dispute over whether arrest warrant was served before arrest, but no dispute that no NTA was issued and no removal proceedings were pending until after arrest).

23. *Sanchez Alfaro v. Mullin*, No. 26-CV-0766, 2026 WL 734348, at *4–*5 (E.D.N.Y. Mar. 16, 2026) (noting post-arrest issuance of warrant and NTA and finding "ICE officers presume that they will effect an arrest *unless* they can discover cause *not* to do so by performing a records check," in light of ICE testimony that "[w]e are going to see if . . . there is any reason not to take him into custody and what detention authority . . . it would fall under").

24. *Andrade Escobar v. Mullin*, No. 26-CV-1661 (E.D.N.Y.) (Order dated Mar. 20, 2026 at 1, 3).

25. *Blandon v. Maldonado*, No. 26-CV-1669, 2026 WL 790910, at *3, *5 (E.D.N.Y. Mar. 21, 2026) (noting post hoc arrest warrant).

26. *Menjivar Giron v. Genalo*, No. 26-CV-1714, 2026 WL 809965, at *3 (E.D.N.Y. Mar. 24, 2026) (noting petitioner was issued an arrest warrant and arrested before any removal proceedings were initiated by an NTA).

27. *Castro Escobar v. Mullin*, No. 26-CV-1795 (E.D.N.Y.) (Order dated Mar. 27, 2026 at 3).

28. *Guaman Urena v. Bondi*, No. 26-CV-1851 (E.D.N.Y.) (Order dated Mar. 30, 2026 at 1, 3).

29. *Flores v. Mullin*, No. 26-CV-1855, 2026 WL 948298, at *1 (E.D.N.Y. Apr. 8, 2026) ("Petitioner had received no arrest warrant, summons or Notice to Appear either prior to or at the time of his apprehension.").

30. *Cordova Garcia v. Maldonado Jr.*, No. 26-CV-2102 (E.D.N.Y.) (Order dated Apr. 13, 2026 at 3 & n.1).

31. *Huerta-Mayancela v. Blanche*, No. 26-CV-2190 (E.D.N.Y.) (Order dated Apr. 15, 2026 at 3 n.1).